# IN THE SUPREME COURT, STATE OF WYOMING

# 2013 WY 36

## OCTOBER TERM, A.D. 2012

## March 20, 2013

SHERIDAN FIRE FIGHTERS LOCAL NO. 276,
IAFF, AFL-CIO, CLC,

Appellant
(Plaintiff),

v.

No. S-12-0108

CITY OF SHERIDAN, WYOMING,

Appellee
(Defendant).

*Appeal from the District Court of Sheridan County*
*The Honorable John G. Fenn, Judge*

*Representing Appellant:*

Thomas B. Buescher, Buescher, Goldhammer, Kelman and Dodge, PC, Denver, Colorado; H.W. Rasmussen, Sheridan, Wyoming. Argument by Mr. Buescher.

*Representing Appellee:*

Jodi D. Shea and Michael G. Weisz, Pence and MacMillan, LLC, Laramie, Wyoming; Gregory A. Von Krosigk, Pence and MacMillan, LLC, Sheridan, Wyoming. Argument by Mr. Weisz.

*Before KITE, C.J., and HILL, VOIGT, BURKE, and DAVIS, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**BURKE, Justice.**

[¶1]    Appellant, Sheridan Fire Fighters Local No. 276, IAFF, AFL-CIO, CLC, filed suit in district court against the City of Sheridan alleging breach of their collective bargaining agreement.  Local 276 claimed that the City breached the Agreement when it failed to provide pay raises to five firefighters who had qualified for a "step increase" in salary. The City contended that the raises were not required and that, under the terms of the Agreement, it retained discretion in the award of pay raises.  Both parties filed motions for summary judgment, and the district court granted summary judgment in favor of the City.  Local 276 challenges that decision in this appeal.  We will reverse the district court's decision and remand for entry of summary judgment in favor of Local 276.

## *ISSUES*

[¶2]    Local 276 presents these issues:

> 1.      Whether the Trial Court erred as a matter of law in determining that the provision regarding step increases in the 2010-2011 Collective Bargaining Agreement between the parties is not ambiguous, therefore not warranting the consideration of extrinsic evidence.
>
> 2.      Whether the Trial Court erred as a matter of law in concluding that the provision regarding step increases in the 2010-2011 Collective Bargaining Agreement between the parties unambiguously allowed the City to unilaterally decide not to pay out step increases.

The City's statement of the issues is as follows:

> I. Whether a collective bargaining agreement is ambiguous as to qualification for a "step" increase when the collective bargaining agreement contains the parties' express agreement that the City retained the power to determine all employee qualifications.
>
> II. Whether an implied term can be added to a collective bargaining agreement when doing so would violate statutory budgeting provisions.
>
> III. Whether an integral and material item such as a guaranteed pay raise can be added to a collective bargaining agreement by implication and without additional

1

consideration therefore, and assuming *arguendo* such a material term can be added by implication would such an amendment be in contravention of Wyoming law concerning the contracting ability of a governing body.

## *FACTS*

[¶3]   Local 276 and the City have been parties to annual collective bargaining agreements for more than thirty years.  The collective bargaining agreement now at issue became effective on July 1, 2010, and expired on June 30, 2011.  It covered all full-time firefighters and medical personnel of the Sheridan Fire-Rescue Department.  It covered a broad array of employment-related topics, including work hours, vacations, sick leave, holidays, uniforms and clothing allowances, residency requirements, and medical insurance.   In the article entitled "Wages," the Agreement contained a detailed table setting forth pay grades for the various positions, and a range of salaries or "steps" for each pay grade.[1]   The basic thrust of the pay grade and step table was, as explained by the City, "if a firefighter moves up one step or one grade, he or she will get a pay raise."

[¶4]   Facing budget issues in 2010, the City Council voted to freeze the salaries of all City employees.   In a memorandum dated September 27, 2010, the City's Human Resources Director and the Fire Chief informed all fire department personnel that,

> Due to the continued decrease in sales and use tax revenue as a result of the economic downturn that affects general fund expenditures, the City is suspending the 5% annual step increases for those employees who are not stepped out.[2]   This suspension is in effect for the fiscal year beginning July 1, 2010.

Local 276 objected.   The Union contended that, under the collective bargaining agreement, every covered employee who received a satisfactory performance rating would automatically move up one step, and thereby get a pay raise.   It identified five firefighters who had received satisfactory evaluations and were not "stepped out," and claimed that the City owed them additional pay in the total amount of $6,651.78.

---

[1] The terms "grade" and "step" are not defined in the Agreement itself, but the Agreement provides that the City's employee handbook applies where not inconsistent with the Agreement.  In the handbook, "grade" is defined as "[a] specific range of pay rates within the compensation/pay plan," and "step" is defined as "[a] single rate of pay within a pay grade."

[2] The term "stepped out" refers to an employee who is already at the top step in the pay grade.  The parties do not dispute that "stepped out" employees are not entitled to automatic raises in pay.

2

Following the procedures set forth in the collective bargaining agreement, Local 276 filed a grievance with the City on behalf of the five employees. The City denied the grievance, maintaining that the collective bargaining agreement "does not contain any requirement for . . . mandatory 5% annual wage increases." It asserted that the City was "in a state of financial crisis," and could not afford "to give any raise to any City employee."

[¶5]    After the grievance was denied, Local 276 filed a complaint against the City in district court, claiming breach of the collective bargaining agreement. Both parties moved for summary judgment. In support of its motion, Local 276 presented evidence that the consistent practice under previous collective bargaining agreements was that employees who received satisfactory performance ratings automatically received salary increases. It also provided evidence demonstrating that, when the City wanted to freeze salaries in the past, it negotiated with Local 276 to include language in the Agreement specifically allowing for a pay freeze. Local 276 recognized that this evidence was extrinsic to the contract, but asserted that the evidence was admissible and should be considered because the collective bargaining agreement was ambiguous.

[¶6]    The City contended in its summary judgment motion that the Agreement was clear and unambiguous, and did not mandate automatic salary increases. It asserted that the extrinsic evidence offered by Local 276 was inadmissible, and could not be used to contradict the unambiguous collective bargaining agreement. In addition, the City relied on *Mariano & Assocs., P.C. v. Board of County Comm'rs*, 737 P.2d 323, 331-32 (Wyo. 1987) to assert that Wyoming law prohibited the City Council from contracting away the discretion of future councils. Because the City could not lawfully agree to automatic raises in the future, it claimed that the collective bargaining agreement could not be interpreted to mandate automatic raises.

[¶7]    After considering the competing summary judgment motions, the district court issued a two-page order containing these findings and conclusions:

> 1.)    The contract is silent on the issue of step increases.
>
> 2.)    The contract is not ambiguous because of this silence and, therefore, the consideration of extrinsic evidence is not permitted.
>
> 3.)    The Court rejects the City's argument under the *Mariano* Doctrine.
>
> 4.)    The Court rejects the City's argument of failure of consideration.

3

> 5.) The City of Sheridan, Wyoming is entitled to summary judgment.

On this basis, the district court denied Local 276's motion for summary judgment, and granted summary judgment to the City. Local 276 appealed that decision.

## *STANDARD OF REVIEW*

[¶8]  Because summary judgment involves a purely legal determination, we undertake *de novo* review of a trial court's summary judgment decision. *Glenn v. Union Pacific R.R. Co.*, 2008 WY 16, ¶ 6, 176 P.3d 640, 642 (Wyo. 2008).

> Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. W.R.C.P. 56(c); *Metz Beverage Co. v. Wyoming Beverages, Inc.*, 2002 WY 21, ¶ 9, 39 P.3d 1051, 1055 (Wyo. 2002). "A genuine issue of material fact exists when a disputed fact, if it were proven, would establish or refute an essential element of a cause of action or a defense that the parties have asserted." *Id*.

*Jacobs Ranch Coal Co. v. Thunder Basin Coal Co., LLC*, 2008 WY 101, ¶ 8, 191 P.3d 125, 128-29 (Wyo. 2008).

## *DISCUSSION*

[¶9]  "Our purpose in interpreting any contract is to ascertain the true intent of the parties." *Sutherland v. Meridian Granite Co.*, 2012 WY 53, ¶ 8, 273 P.3d 1092, 1095 (Wyo. 2012).

> One of the "settled rules of contract interpretation" is to "begin with the language of the contract." *Wyoming Bd. of Land Comm'rs v. Antelope Coal Co.*, 2008 WY 60, ¶ 8, 185 P.3d 666, 668 (Wyo. 2008).
>
> > [T]he words used in the contract are afforded the plain meaning that a reasonable person would give to them. *Doctors' Co. v. Insurance Corp. of America*, 864 P.2d 1018, 1023 (Wyo. 1993). When the provisions in the contract are clear and unambiguous, the court looks only to the "four corners" of the document in arriving at the intent of the parties. *Union Pacific Resources Co.* [*v. Texaco*], 882 P.2d [212,] 220 [(Wyo. 1994)];

> *Prudential Preferred Properties* [*v. J and J Ventures*],
> 859 P.2d [1267,] 1271 [(Wyo. 1993)]. In the absence
> of any ambiguity, the contract will be enforced
> according to its terms because no construction is
> appropriate. *Sinclair Oil Corp. v. Republic Ins. Co.*,
> 929 P.2d 535, 539 (Wyo. 1996).

> *Amoco Prod. Co. v. EM Nominee Partnership Co.*, 2 P.3d
> 534, 540 (Wyo. 2000).

*Hunter v. Reece*, 2011 WY 97, ¶ 17, 253 P.3d 497, 501-02 (Wyo. 2011).

[¶10] When the contract is ambiguous, however, extrinsic evidence and rules of contract construction may be used in an effort to ascertain the parties' intention. *Davison v. Wyoming Game and Fish Comm'n*, 2010 WY 121, ¶ 27, 238 P.3d 556, 565 (Wyo. 2010). "An ambiguous contract 'is an agreement which is obscure in its meaning, because of indefiniteness of expression, or because a double meaning is present.'" *State Farm Fire and Casualty Co. v. Paulson*, 756 P.2d 764, 766 (Wyo. 1988), quoting *Bulis v. Wells*, 565 P.2d 487, 490 (Wyo. 1977). Whether a contract is ambiguous is a question of law for the reviewing court. We review questions of law *de novo*. *Amoco Prod. Co.*, 2 P.3d at 540.

[¶11] The provision of the Agreement of particular significance in this case is Article X, Section A. It set forth a grade and step system that established pay grades for all positions in the fire department. Within each pay grade, it specified a range of salaries, or steps. Because of its significance, this provision is quoted here in full:

ARTICLE X

WAGES

Section A

The following monthly scale of wages will apply on July 1, 2010.

| Grade | Step 1 | Step 2 | Step 3 | Step 4 | Step 5 | Step 6 | Step 7 |
|-------|--------|--------|--------|--------|--------|--------|--------|
| 15 | 2423 | 2544 | 2671 | 2805 | 2945 | 3093 | 3247 |
| 16 | 2544 | 2671 | 2805 | 2945 | 3093 | 3247 | 3413 |
| 17 | 2671 | 2805 | 2945 | 3093 | 3247 | 3413 | 3580 |
| 18 | 2805 | 2945 | 3093 | 3247 | 3413 | 3580 | 3759 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 19 | 2945 | 3093 | 3247 | 3413 | 3580 | 3759 | 3947 |
| 20 | 3093 | 3247 | 3413 | 3580 | 3759 | 3947 | 4144 |
| 21 | 3247 | 3413 | 3580 | 3759 | 3947 | 4144 | 4352 |
| 22 | 3413 | 3580 | 3759 | 3947 | 4144 | 4352 | 4569 |
| 23 | 3580 | 3759 | 3947 | 4144 | 4352 | 4569 | 4797 |
| 24 | 3759 | 3947 | 4144 | 4352 | 4569 | 4797 | 5037 |
| 25 | 3947 | 4144 | 4352 | 4569 | 4797 | 5037 | 5288 |

Note:

The positions covered under this contract are:

| | |
|---|---|
| EMT – Intermediate, | grade 15 |
| EMT – Paramedic, | grade 17 |
| EMT – Charge Paramedic, | grade 18 |
| Firefighter I, | grade 19 |
| Firefighter I/EMT-I | grade 21 |
| Firefighter I/EMT-P | grade 22 |
| Firefighter II, | grade 22 |
| Fire Lieutenant | grade 23 |
| Fire Inspector | grade 23 |
| Captain, | grade 24 |
| Division Chief-Operations, | grade 25 |
| Fire Marshal, | grade 25 |

As of February 1, 2008 the position of Division Chief-Operations will be an exempt position. As of July 1, 2010 Division Chief-Operations [TL]'s annual salary will remain: $69,484.56 plus longevity.

When an employee reclassifies to a dual role Firefighter/ALS position or an employee is re-graded, their pay increase shall be equivalent to five percent (5%) within the new grade with no change in their anniversary date. Increases shall be effective upon the certification of the employee or utilization within the classification.

Management reserves the right to modify job descriptions as

it deems necessary. In the event that the duties of a job classification are substantially revised either party may request negotiations of compensation for that classification within two (2) weeks of formal notification of the revision. All applicable job descriptions are attached as reference to the end of the contract.

[¶12] This provision sets forth the pay grades and step increases in comprehensive detail, but does not explicitly provide when, whether, or under what circumstances an employee would be moved up a step. Local 276's position is that step increases are automatically given to employees who receive satisfactory evaluations. It acknowledges that there is no language in the Agreement providing that and, on this basis, asserts that the Agreement is ambiguous.

[¶13] The City's position is that it retained discretion to grant or deny step increases. It concedes that the grade and step table "does not by itself describe how a firefighter can qualify for a 'step up.'" However, it contends that there is language in the quoted provision and elsewhere in the Agreement that unambiguously establishes that the City has discretion to grant or deny step increases.

[¶14] The City first cites the provision of the Agreement requiring raises in two situations: "When an employee reclassifies to a dual role Firefighter/ALS position or an employee is re-graded, their pay increase shall be equivalent to five percent (5%) within the new grade with no change in their anniversary date." The City asserts that these were "the only mandatory pay raises as to which the City and Local 276 agreed." Because these raises were specified as mandatory, the City asserts that no other raises are mandatory. This, the City claims, establishes that it retained the discretion to grant or deny raises in all but these two circumstances.

[¶15] Local 276 agrees that the language relied on by the City establishes how pay increases will occur in two specific situations not otherwise provided for in the Agreement, but it contends that this does not indicate how a firefighter might receive a step increase. The Union points out that the Agreement does not contain any "sort of limiting phrase . . . indicating that these were the *only* ways in which a firefighter could receive a pay increase." (Emphasis in original.) Local 276 contends it is equally plausible that the City was required to give pay increases in the two specified situations, and was also required to give step increases to any firefighter who receives a satisfactory performance rating.

[¶16] The City is correct that we must consider all of the pertinent language in the Agreement.

> Our rules of interpretation require that we interpret a contract
> as a whole, reading each provision in light of all the others to
> find their plain meaning. *Arnold v. Ommen*, 2009 WY 24, ¶
> 40, 201 P.3d 1127, 1138 (Wyo. 2009); *see also Caballo Coal
> Co. v. Fid. Exploration & Prod. Co.*, 2004 WY 6, ¶ 11, 84
> P.3d 311, 314-15 (Wyo. 2004). We presume each provision
> in a contract has a purpose, and we avoid interpreting a
> contract so as to find inconsistent provisions or so as to render
> any provision meaningless. *Scherer v. Laramie Reg'l Airport
> Bd.*, 2010 WY 105, ¶ 11, 236 P.3d 996, 1003 (Wyo. 2010).

*Claman v. Popp*, 2012 WY 92, ¶ 28, 279 P.3d 1003, 1013 (Wyo. 2012). We also agree with the City that the Agreement's listing of two situations in which pay raises are required could be read to indicate that raises in pay are not also required in other situations. But it is an indication only, and falls well short of a plain or obvious expression of the parties' intent. We agree with Local 276 that the provision relied upon by the City does not preclude other plausible interpretations. The provision relied upon by the City does not render the Agreement clear and unambiguous on the question of when, whether, and under what circumstances firefighters are to be moved up a step.

[¶17] Second, the City points out a provision of the Agreement giving the City authority to "determine the qualifications of employees." Under this provision, the City asserts that it had "the power to establish employee qualifications, such as qualifying for a step increase." Local 276's response is that the City is misusing the word "qualification." It argues that the word "qualification" refers to the suitability or eligibility of a person to obtain a particular job or position, not how a person earns a raise in pay within that position. The Union further contends that, even if the City had the authority to determine an employee's "qualifications" to receive a pay raise, it had already determined that these five firefighters were "qualified" when it gave them satisfactory performance evaluations.

[¶18] The word "qualification" is defined as "[a]ny quality, accomplishment, or ability that suits a person to a specific position or task." *American Heritage Dictionary* 1067 (1978). In the past, we have used the word "qualifications" in a manner consistent with this definition. For example, we said that Wyo. Stat. Ann. § 1-11-101 sets forth "the qualifications for service as a juror," which include being an adult, a citizen of the United States, and a resident of Wyoming. *Lake v. State*, 2013 WY 7, ¶ 18, 292 P.3d 174, 179 (Wyo. 2013). We have referred to Section 2 of Article 6 of the Wyoming Constitution as "defining the qualifications of electors," which include residency in the State and County. *Simpkin v. Rock Springs*, 33 Wyo. 166, 177, 237 P. 245, 248 (Wyo. 1925). When the word "qualifications" is considered this way, it seems plain that the Agreement gave the City authority to decide, for example, what level of education or experience a person needs to be hired as a Fire Lieutenant. It is not so obvious that the language applies to the step increases provided for in the Agreement. The City's interpretation may be plausible,

8

but it is neither clear nor obvious based on the language of the Agreement.

[¶19]  Moreover, Local 276 has proposed an equally reasonable alternative to the City's interpretation.  It is possible that the City and the Union mutually agreed that firefighters who received satisfactory performance evaluations would automatically receive a step increase, but that the City retained discretion to determine whether the firefighters "qualified" for a satisfactory performance evaluation.  Contrary to the City's contentions, the Agreement is susceptible to more than one plausible interpretation.

[¶20]  Third, the City recites language from its Employee Handbook defining the term "merit increase" as "an increase in salary for work performed but not associated with a promotion or change in job title."  The City asserts that a step increase as set forth in the Agreement fits the definition of a merit increase.  The Handbook also specifies that an "employee who meets expectations or demonstrates sustained superior performance, as evidenced by a [satisfactory or better] overall rating on a current performance appraisal may be eligible for a merit [increase]."  The City points out that such an employee "may be eligible for" a merit increase, but is not "entitled to" one.  Further, the Handbook clearly states that the "amount of each merit raise will be based upon the availability of funding," and that "[f]unding may not permit a merit increase for all employees with a [satisfactory] rating."  Thus, the City argues, the Handbook unambiguously establishes that the City retained discretion to grant or deny salary increases.

[¶21]  The flaw in the City's argument, according to Local 276, is that the Employee Handbook does not necessarily apply to the firefighters covered by the Agreement.  The Agreement stated that all regular full-time firefighters and medical personnel "shall conform to the City of Sheridan Personnel Policies and Procedures Manual[3] where consistent with the current COLLECTIVE LABOR AGREEMENT, the City's Substance Abuse Policy, Civil Service Rules and Regulations, and applicable State and Federal laws."  The Union focuses on the phrase "where consistent," and argues that the portions of the Handbook relied on by the City do not apply to firefighters if they are inconsistent with the Agreement.

[¶22]  Local 276's argument is persuasive.  If the City and Local 276 agreed to mandatory salary raises for satisfactory employees, as the Union contends, then the provisions of the Employee Handbook giving the City sole discretion to determine pay increases would be inconsistent with the Agreement.  The Handbook provisions would not apply.  The City may have discretion to give or deny raises to its employees who are not covered by the Agreement, but that does not clearly or obviously indicate that the

_____

[3] There appears to be no dispute that the Employee Handbook is the "City of Sheridan Personnel Policies and Procedures Manual" indicated in the Agreement.

9

City also has such discretion with regard to covered employees.

[¶23] Despite the City's arguments, the Agreement remains unclear and obscure on the question of when, whether, or under what circumstances the step increases would be given. We have said that, where a contract is "silent" on some significant point, "the terms of the contract are obviously unclear." *Madison v. Marlatt*, 619 P.2d 708, 716 (Wyo. 1980). The language is indefinite and susceptible to more than one plausible interpretation. It is ambiguous. *Davison*, ¶ 9, 238 P.3d at 560; *State Farm*, 756 P.2d at 766.

[¶24] "If the language is ambiguous, then the court may use extrinsic evidence in an effort to determine the intentions of the parties." *Davison*, ¶ 9, 238 P.3d at 560, citing *Lozier v. Blattland Investments, LLC*, 2004 WY 132, ¶ 9, 100 P.3d 380, 383-84 (Wyo. 2004).[4] We have recognized that "a court, when resorting to contract interpretation is free to rely upon the parties' own conduct as evidence of their intent." *Ashland Oil Co. v. Jaeger*, 650 P.2d 265, 269 (Wyo. 1982).

> This kind of evidence is often called "course of performance" evidence. Joseph M. Perillo, *Calamari and Perillo on Contracts* § 3.17, at 146 (6th ed. 2009); *see Linton v. E. C. Cates Agency, Inc.*, 2005 WY 63, ¶ 17, 113 P.3d 26, 30 (Wyo. 2005). We have said that such evidence can be especially useful because "the practical construction put upon [a contract] by the parties should have great weight in determining its proper construction." *True Oil Co. v. Sinclair Oil Corp.*, 771 P.2d 781, 792 (Wyo. 1989), citing *Rohrbaugh v. Mokler*, 26 Wyo. 514, 519, 188 P. 448, 450 (Wyo. 1920) and other cases.

*Hunter*, ¶ 24, 253 P.3d at 503. *See also J. W. Denio Milling Co. v. Malin*, 25 Wyo. 143,

---

[4] Local 276 also asserts that collective bargaining agreements are not ordinary contracts, and are not subject to "principles of ordinary contract law." *Bowen v. United States Postal Service*, 459 U.S. 212, 224, 103 S.Ct. 588, 596, 74 L.Ed.2d 402 (1983). In particular, Local 276 asserts that when interpreting such an agreement, "it is necessary to consider the scope of other related collective bargaining agreements, as well as the practice, usage and custom pertaining to all such agreements." *Macomb County v. Police Officers Ass'n of Michigan*, 2011 Mich. App. LEXIS 1596, *17 (2011). The City counters that past practices are to be considered only where the collective bargaining agreement includes a past practices clause "that evidences the mutual intent of the parties to establish these benefits as enforceable past practices." *Rhode Island Court Reporters Alliance v. State*, 591 A.2d 376, 378 (R.I. 1991). It is unnecessary to resolve this issue in this case because we are considering past practices under the principle of ordinary contract interpretation that extrinsic evidence may be used to interpret an ambiguous contract.

10

155, 165 P. 1113, 1115 (Wyo. 1917) ("Parties are far less liable to have been mistaken as to the meaning of their contract during the period while harmonious and practical construction reflects that intention, than they are when subsequent differences have impelled them to resort to law.").

[¶25] The Union offered evidence of the parties' prior conduct under previous collective bargaining agreements. In past years when the City wanted to freeze firefighters' salary increases, it negotiated with Local 276 to place a provision in the collective bargaining agreement expressly agreeing that no step increases would be given. The 1987-1988 collective bargaining agreement contained this provision:

> LOCAL 276 agrees to freeze longevity and step increases at the level that is in effect on June 30, 1987; furthermore, LOCAL 276 agrees that 24-hour personnel shall be furloughed 132 hours/man and 8 hour personnel shall be furloughed 96 hours/man per 1987-1988 fiscal year.
>
> The LOCAL and the CITY both agree that this section is only for the fiscal year 1987-1988 or in the event that the Resolution freezing wages and allowing for furloughs, which was passed on June 15, 1987, is rescinded by the CITY.

The 1988-1989 collective bargaining agreement included the same provision with different dates. In other years, however, the agreements included the pay grade and step table and contract language that are functionally equivalent to the provisions of the Agreement now under review.[5]

[¶26] As Union President George Neeson stated in his affidavit, to his knowledge "this step and grade system (along with the 5% differential between each step) has been in place since the 1980's." He stated that, except the two years in which a pay freeze was explicitly negotiated, firefighters "who had not reached the top step and who received a satisfactory performance evaluation were moved to and paid at the next higher step." Step increases were not given only in the two years when the agreements included explicit language agreeing to "freeze longevity and step increases." Local 276 presents this as evidence that, absent specific language agreeing otherwise, the consistent practice has been that firefighters who had satisfactory performance ratings were automatically given step increases.

---

[5] By "functionally equivalent" we mean to say that the language is nearly identical to the Agreement provision quoted above, and the pay grade and step table is the same except that the listed salaries have increased over the years.

[¶27] Local 276 also presented evidence showing that, for fiscal year 2006-2007, the Union and the City failed to agree to the terms of a new collective bargaining agreement, and the disagreement was arbitrated. One of the issues presented to the arbitrators was the pay scale for firefighters. Local 276 proposed an increase in all step levels. The City proposed that firefighters would be "eligible" for merit salary increases, but the increases would only be given "based on council approved funding." In sworn testimony before the arbitration panel, Sheridan's Mayor David Kinskey explained how the City's proposal differed from past collective bargaining agreements. Under the City's proposal, step increases would be "subject to city council funding," and there would be no "guarantee" of merit salary increases. Mayor Kinskey indicated that this was different from previous collective bargaining agreements under which "if you receive a satisfactory, if you are not stepped out, you get a 5 percent increase." The arbitrators rejected the City's proposal and left the Union's preferred pay grade and step table in effect.

[¶28] Other City officials testifying before the arbitration panel confirmed Mayor Kinskey's description of their past practices. Human Resources Director Heather Doke explained, "If they [firefighters] received a satisfactory performance rating and they were not stepped out, they received that 5 percent." She was asked, "[U]nder the current firefighter basis system, a satisfactory evaluation results in a 5 percent step increase, correct?" Her answer was, "Yes." When asked, "And is that automatic?" she responded, "If they get a satisfactory on their performance appraisal, they move up a step. That's where it comes in. It's not automatic, but they have to get a satisfactory on the performance appraisal to get that." Fire Chief Patrick Reitz was asked, "So to get the 5 percent annual increase, all that's required is a satisfactory rating on that performance appraisal?" He agreed, "That is correct."

[¶29] It is undisputed that the five firefighters represented by the Union were eligible for step increases. Local 276 presented evidence of past practices indicating that the Agreement should be interpreted to require step increases for all eligible firefighters. The burden then shifted to the City "to establish through 'specific facts' that a material question of fact remains." *Sierra Club v. Wyoming Dep't of Envtl. Quality*, 2011 WY 42, ¶ 25, 251 P.3d 310, 317 (Wyo. 2011), quoting *Cornelius v. Powder River Energy Corp.*, 2007 WY 30, ¶ 10, 152 P.3d 387, 390 (Wyo. 2007). We have combed the record, and found that the City offered no evidence refuting that of Local 276. Local 276 sufficiently demonstrated that there are no genuine issues of material fact, and that it is entitled to judgment as a matter of law. Summary judgment should not have been granted in favor of the City, but instead should have been granted in favor of Local 276.

[¶30] Two additional issues require consideration. First, the City points out that it is required by statute to adopt a municipal budget for each fiscal year, and must appropriate "an amount of money necessary to defray all expenses and liabilities." Wyo. Stat. Ann. § 15-2-201(a) (LexisNexis 2011). After the budget is passed, no City officer or employee

may make any expenditure in excess of the total appropriations. Wyo. Stat Ann. § 16-4-108. The City did not appropriate funds to pay salary increases to firefighters for the fiscal year 2010-2011. It argues that the "Court cannot add a material term to the [Agreement] by implication, for doing so would violate the statutory scheme for municipal budgets."

[¶31] The City's argument misses the mark because we are not adding an implied term to the Agreement. We are applying principles of ordinary contract interpretation to ascertain the meaning of an ambiguous contract. There is no merit in the City's suggestion that it can avoid a contractual obligation by refusing to appropriate funds to pay that obligation.

[¶32] Second, the City contends that a city council is prohibited from binding any future city council to a contract or agreement extending beyond the term of the contracting authority. *Mariano*, 737 P.2d at 331-32. It claims that we cannot consider past practices or interpretations so as to impose a perpetual term requiring the City to raise firefighter salaries in the future. This argument also lacks merit. We are interpreting a contract that explicitly "remain[ed] in effect from 12:01 a.m. July 1, 2010 until June 30, 2011 at 12:00 midnight," and our decision applies only to that fiscal year. It does not bind any future city council or extend the Agreement beyond its limited one-year term. The City was free to negotiate new terms with Local 276 for fiscal years 2011-2012 and 2012-2013, and it remains free to negotiate a new collective bargaining agreement in future years. We agree with the district court on this point and "reject[] the City's argument under the *Mariano* Doctrine."

## CONCLUSION

[¶33] The collective bargaining agreement between the City and Local 276 for the fiscal year 2010-2011 was ambiguous about whether step increases in salary were mandatory or left to the City's discretion. We therefore considered extrinsic evidence in an effort to interpret the Agreement and discern the parties' intent. In support of its summary judgment motion, Local 276 presented evidence of the parties' past conduct, which was consistent with the Union's interpretation that the Agreement required the City to give step increases to all eligible firefighters. The City offered no evidence to the contrary, and so raised no genuine issues of material fact. "[E]ven where extrinsic evidence is admissible to establish the intent of the parties, a summary judgment may be appropriate when the evidence fails to raise an issue of fact requiring resolution at trial." *Madison*, 619 P.2d at 716. When there are no genuine issues of material fact and one party has shown it is entitled to judgment in its favor, this Court has the authority to order that summary judgment be entered in favor of that party. *See, e.g.*, *Baker v. Ayres and Baker Pole and Post, Inc.*, 2005 WY 97, ¶ 33, 117 P.3d 1234, 1244 (Wyo. 2005).

[¶34] We reverse the district court's grant of summary judgment in favor of the City,

and remand for entry of summary judgment in favor of Local 276.