# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 129

### OCTOBER TERM, A.D. 2013

### October 16, 2013

GARY L. HOPKINS and MARY
HOPKINS,

Appellants
(Plaintiffs),

v.

S-13-0005

BANK OF THE WEST, RANDAL L.
BURNETT
and G & R ENTERPRISES, LLC,

Appellees
(Defendants).

*Appeal from the District Court of Albany County*
*The Honorable Jeffrey A. Donnell, Judge*

*Representing Appellants:*
A. Joe Hageman, Laramie Wyoming.

*Representing Appellee Bank of the West:*
Terry W. Connolly, Patton & Davison, Cheyenne, Wyoming.

*Representing Appellees Randal L. Burnett and G & R Enterprises, LLC:*
No appearance.

*Before KITE, C.J., and HILL, VOIGT, BURKE, and DAVIS, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**VOIGT**, **Justice**.

[¶1]   Gary L. Hopkins and Mary Hopkins appeal the district court's order granting summary judgment in favor of Bank of the West.[1]  The Hopkins claim that material facts concerning a contract are in dispute, making summary judgment inappropriate. Specifically, they argue the contract's language is ambiguous and the district court should have considered extrinsic evidence of the parties' intent when interpreting the contract. We affirm the district court's order.

## ISSUE

[¶2]   Did the district court err when it granted summary judgment in favor of Bank of the West after finding that the contract between the parties was unambiguous after limiting its analysis to the four corners of the contract?

## FACTS

[¶3]   In 2001, Gary Hopkins and Randal Burnett formed a Wyoming limited liability company called G & R Enterprises, LLC, in which they each owned a 50 percent interest. Hopkins and Burnett formed the business for the purpose of constructing and operating a combined laundromat and carwash.  The partners agreed they would finance the project with a United States Small Business Administration (SBA) loan.  The logistics of the funding involved a pledge from the SBA, acting through Frontier Certified Development Company, Inc. (FCDC), who would loan 31 percent of the total project costs, and Community First National Bank (CFNB) loaning 50 percent of the total project costs.

[¶4]   CFNB loaned G & R Enterprises $950,000, which included both the loan pledged by CFNB and the loan pledged by FCDC.  G & R Enterprises signed a promissory note to CFNB in that amount.  To secure the loan, G & R Enterprises executed a mortgage to CFNB on the laundromat and carwash property and Hopkins executed a second mortgage (subject to a first mortgage held by M&T Mortgage) on two rental properties he personally owned.  CFNB also required personal guarantees from Hopkins and Burnett for the full amount of the loan.

[¶5]   Thereafter, in order to arrange for the SBA/FCDC portion of the loan, Hopkins and Burnett individually and on behalf of G & R Enterprises signed an "Authorization for Debenture Guarantee."  That document set forth the conditions of the SBA loan, listed FCDC as the local company that would be issuing the SBA portion of the loan, and

---

[1] The caption names Bank of the West, Randal L. Burnett, and G & R Enterprises, LLC, as the appellants. However, Burnett and G & R Enterprises confessed judgment against themselves and assigned to the appellants the cross-claims they alleged against Bank of the West.  Therefore, this appeal deals only with the claims against Bank of the West.

1

specified that this portion of the loan would be secured with: (1) a second mortgage in the laundromat and carwash property, equipment, and fixtures; (2) third mortgages in Hopkins' rental properties (subject to M&T Mortgage's first mortgages and CFNB's second mortgages); and (3) personal guarantees by Hopkins and Burnett.

[¶6]     FCDC then provided the SBA's portion of the project loan by paying $380,000 to CFNB to pay down the debt G & R Enterprises owed to CFNB.  Hopkins and Burnett signed a "Modification of Promissory Note" on behalf of G & R Enterprises to show that they now owed CFNB $608,406.  The practical effect of these transactions resulted in G & R Enterprises owing $608,406 on a loan to CFNB, which was approximately 50 percent of the project costs, and owing $380,000 to FCDC for the SBA loan, which was 31 percent of the project costs.

[¶7]     Approximately two years later, Burnett agreed to buy Hopkins' membership in G & R Enterprises.  Burnett contacted the Laramie branch of Bank of the West, which had acquired CFNB and took over and became successor-in-interest to the CFNB loan, about removing the liens on Hopkins' rental properties.  Bank of the West sent letters to Burnett and Hopkins' attorney, explaining what information Bank of the West would need before it would consider releasing Hopkins from liability on the Bank of the West (formerly CFNB) loan.  After receiving the information, Bank of the West determined that it would release Hopkins from its loan, provided that Burnett and his wife pledged additional security to compensate for the loss of Hopkins' rentals as collateral.  Burnett and his wife made a payment of $50,000 to Bank of the West, provided Bank of the West with a mortgage on their personal residence, and Mrs. Burnett provided a personal guarantee on the loan.

[¶8]     The Burnetts, Hopkins, and G & R Enterprises signed a "Change in Terms Agreement," which reflected Hopkins' departure from the company, his release from the personal guarantee on the Bank of the West loan, the addition of Mrs. Burnett as a member of the company and a personal guarantor on the Bank of the West loan, and Bank of the West's release of the second mortgages on Hopkins' rental properties.  As agreed, Bank of the West released the second mortgages on the properties.  However, the third mortgages on the property that were held by SBA were not mentioned in the agreement or released.

[¶9]     The Burnetts stopped making payments on the Bank of the West and SBA loans in 2009; consequently G & R Enterprises and the Burnetts defaulted on their obligations under both loans.  Bank of the West foreclosed on the mortgage covering the business property, although it allowed Burnett to remain in possession of and continue to operate the business.  Because the third mortgages on his rental properties were not released by SBA, Hopkins has been forced to continue to make the payments on the SBA loan to avoid having the third mortgages on those properties foreclosed.

2

[¶10] Hopkins and his wife filed a complaint against Bank of the West, Burnett, and G & R Enterprises for breach of contract, default of the promissory note and members' agreement, failure to release the third mortgages, and statutory damages. Burnett and G & R Enterprises filed a cross-complaint against Bank of the West for breach of contract, which was then assigned to the Hopkins after Burnett and G & R Enterprises requested that an entry of confessed judgment be entered against themselves. The crux of all the claims against Bank of the West was that, pursuant to the agreement between the parties, Bank of the West was supposed to remove Hopkins' liability and the mortgages held on his property pursuant to the Bank of the West and the SBA loans. Bank of the West moved for summary judgment, which the district court granted. The district court found the contract between Hopkins, Burnett, G & R Enterprises, and Bank of the West was not ambiguous and that Bank of the West had abided by the terms of the contract. The Hopkins now appeal that decision.

## STANDARD OF REVIEW

[¶11] This Court has a well-established standard of review when reviewing a district court's decision to grant a motion for summary judgment:

> We review a summary judgment in the same light as the district court, using the same materials and following the same standards. We examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record. A material fact is one which, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties. If the moving party presents supporting summary judgment materials demonstrating no genuine issue of material fact exists, the burden is shifted to the non-moving party to present appropriate supporting materials posing a genuine issue of material fact for trial. We review a grant of summary judgment deciding a question of law de novo and afford no deference to the district court's ruling.

*Herling v. Wyo. Mach. Co.*, 2013 WY 82, ¶ 24, 304 P.3d 951, 957-58 (Wyo. 2013) (quoting *Redland v. Redland*, 2012 WY 148, ¶ 47, 288 P.3d 1173, 1185 (Wyo. 2012)) (citations omitted).

## DISCUSSION

[¶12] The Hopkins contend the district court improperly granted summary judgment because there were material issues of fact in dispute between the parties. Specifically,

they argue that the contract between Hopkins, Burnett, G & R Enterprises, and Bank of the West was ambiguous and that, even if it was unambiguous, the district court should have considered extrinsic evidence in determining the intent of the parties. We will address these assertions individually.

**Ambiguity of the Contract**

[¶13] According to the Hopkins, the district court incorrectly found that the contract removing Hopkins as a guarantor on the loan and to remove the mortgages on his properties was unambiguous. Whether a contract is ambiguous is a question of law for the court to decide. *Cathcart v. State Farm Mut. Auto. Ins. Co.*, 2005 WY 154, ¶ 18, 123 P.3d 579, 587 (Wyo. 2005). "An ambiguous contract is one which either contains a double meaning or is obscure in its meaning because of indefiniteness of expression. *McNeiley v. Ayres Jewelry Co.*, 855 P.2d 1242, 1244 (Wyo. 1993). A difference in interpretation alone, however, does not render a contract ambiguous. *Hickman v. Groves*, 2003 WY 76, ¶ 6, 71 P.3d 256, 258 (Wyo. 2003). If the contractual language is clear and unambiguous, the court may interpret the contract as a matter of law and summary judgment is appropriate. *Fayard v. Design Comm. of Homestead Subdivision*, 2010 WY 51, ¶ 12, 230 P.3d 299, 303 (Wyo. 2010). However, if the contractual language is ambiguous, "a question of fact is presented and summary judgment typically is not warranted." *Id*.

[¶14] The contract at issue here arose out of a letter sent by Apollo Gucake of Bank of the West to the Burnetts, detailing what would be required in order for Bank of the West to approve removing Hopkins as a loan guarantor and removing the second mortgages on Hopkins' rental properties. The Hopkins argue that the letter, which is the basis of the contract, is ambiguous because it led the Hopkins and the Burnetts to believe that, if the terms of the letter were met, Bank of the West would remove the second and third mortgages that were held on Hopkins' rental properties, as well as Hopkins' personal guarantees on both the Bank of the West and the FCDC/SBA loan. In support of this assertion, the Hopkins point to the fact that the "subject line" of the letter states: "RE: Bank of the West Loan [loan number;] CDC # [loan number.]" Further, Mr. Gucake informs the Burnetts that, if they agree with the terms and conditions in the letter, they should send their acknowledgment of that approval to: "SBA Credit Services [address.]"

[¶15] While the inclusion of the FCDC/SBA loan number in the subject line may cause one to take pause when reading the contract, we do not find that it renders the contract ambiguous. When one looks at the writing within the four corners of the contract as a whole, it is clear that Bank of the West was agreeing to release Hopkins as a guarantor on the loan held with Bank of the West, and that it would release the second mortgages it held on Hopkins' rental properties. *See Fayard*, 2010 WY 51, ¶ 12, 230 P.3d at 303 (the Court considers the whole document and not just particular clauses or paragraphs). The letter states:

4

Dear Mr. and Mrs. Burnett:

Bank of the West (the "Bank") acknowledges the change in ownership of G & R Enterprises, LLC and subsequently has agreed to release Gary Hopkins as a loan guarantor. Further, [t]he Bank shall also release its second mortgages on Gary Hopkins['] 2 residential properties at [rental property 1] and [rental property 2], Laramie, WY in exchange for a 3rd mortgage on Burnett's [single family residence] located at [], Laramie, WY and a $50,000 principal loan paydown on the above loan account.

. . . .

[¶16] This language is clear that the terms of the resolution were being put forth by Bank of the West—not FCDC/SBA—and that the plan was for Bank of the West to release the ***second mortgages*** on Hopkins' properties. There is no mention in that paragraph, or anywhere in the letter, of the third mortgages held by FCDC/SBA on the same properties. Therefore, any potential confusion that may have been caused by including the FCDC/SBA loan number in the subject line certainly was extinguished by the fact that that particular loan, and the mortgages associated with it, was never mentioned again in the letter.

[¶17] Additionally, any confusion one may have due to the mailing address provided in the letter is remedied when taking into consideration the entire document. The letter was sent on Bank of the West, SBA Division letterhead. The address on that letterhead is the same address contained in the body of the letter. But more importantly, as explained above, the letter makes absolutely no mention of the ***third mortgages***—the mortgages that are currently held in conjunction with the FCDC/SBA loan. Thus, even if the Hopkins were reasonable in their belief that Bank of the West could service the FCDC/SBA loan, it was not reasonable for them to believe that Bank of the West was offering to remove the third mortgages on Hopkins' properties. The document unambiguously states it is dealing with the second mortgages on the property—nothing more. Therefore, the district court did not err when it determined that the terms of the contract were not ambiguous.

**Extrinsic Evidence**

[¶18] The Hopkins argue that, even if this Court finds the contract unambiguous, the district court erred when it failed to consider extrinsic evidence regarding the parties' intent in going forward with the contract. We disagree.

5

One of the "settled rules of contract interpretation" is to "begin with the language of the contract." *Wyoming Bd. of Land Comm'rs v. Antelope Coal Co.*, 2008 WY 60, ¶ 8, 185 P.3d 666, 668 (Wyo. 2008).

> [T]he words used in the contract are afforded the plain meaning that a reasonable person would give to them. *Doctors' Co. v. Insurance Corp. of America*, 864 P.2d 1018, 1023 (Wyo. 1993). When the provisions in the contract are clear and unambiguous, the court looks only to the "four corners" of the document in arriving at the intent of the parties. *Union Pacific Resources Co.* [*v. Texaco*], 882 P.2d [212,] 220 [(Wyo. 1994)]; *Prudential Preferred Properties* [*v. J and J Ventures*], 859 P.2d [1267,] 1271 [(Wyo. 1993)]. In the absence of any ambiguity, the contract will be enforced according to its terms because no construction is appropriate. *Sinclair Oil Corp. v. Republic Ins. Co.*, 929 P.2d 535, 539 (Wyo. 1996).

> *Amoco Prod. Co. v. EM Nominee Partnership Co.*, 2 P.3d 534, 540 (Wyo. 2000).

*Sheridan Fire Fighters Local No. 276 v. City of Sheridan*, 2013 WY 36, ¶ 9, 303 P.3d 1110, 1113-14 (Wyo. 2013) (quoting *Hunter v. Reece*, 2011 WY 97, ¶ 17, 253 P.3d 497, 501-02 (Wyo. 2011)). If a contract is deemed ambiguous, the district court may take extrinsic evidence into consideration when trying to determine the parties' intentions within the contract. *Id*. at ¶ 10, at 1114. This Court has determined that the contract at issue here was not ambiguous. Thus, the district court was limited to the four corners of the document when interpreting the contract.

[¶19] Despite this general rule, the Hopkins assert that this Court has held that extrinsic evidence should be used to determine the true intent of the parties when entering into a contract. Specifically, the Hopkins point to our decision in *Ultra Resources, Inc. v. Hartman*, 2010 WY 36, ¶ 43, 226 P.3d 889, 909 (Wyo. 2010), where we recognized that courts should consider the circumstances surrounding the execution of an agreement, including things such as the parties' relationship, the subject matter of the contract, and the purpose of the contract, when determining the intent of the parties even if the contract is unambiguous. However, the rule in *Ultra Resources* is not applicable in every contract case.

[¶20] In *Hickman v. Groves*, 2003 WY 76, ¶ 11, 71 P.3d 256, 259-60 (Wyo. 2003), this Court acknowledged the general rule that extrinsic evidence should not be considered

when a contract is unambiguous, but went on to explain that some contracts—like contracts involving mineral interests—may require the use of extrinsic evidence properly to determine the intent of the parties. Some contracts include terms that have a special or technical sense that is not otherwise apparent from the four corners of the document; thus evidence of local usage of the terms and the circumstances surrounding the contract are important tools in properly interpreting the contract. *Id.* We quoted with approval lengthy portions of a respected treatise, part of which succinctly states:

> Therefore, evidence of usage may be admissible to give meaning to apparently unambiguous terms of a contract where other parol evidence would be inadmissible. Thus, circumstances known to the parties at the time they entered into contract, such as what the industry considered to be the norm, or reasonable or prudent, should be considered in construing a contract, while the parties' statements of what they intended the contract to mean are not admissible.

*Id*. at ¶ 13, at 260 (quoting 12 Samuel Williston, *Treatise on the Law of Contracts* § 34:5 (4th ed. 1999)).

[¶21] Although the Hopkins contend that the district court should have taken into consideration extrinsic evidence when determining the intent of the parties, they have not offered any explanation as to why the local usage or technical sense of the terms in the contract would require explanation beyond the plain meaning of the terms. Instead, it appears the Hopkins want to use the extrinsic evidence to show that the parties intended terms that were completely different from the terms that actually were contained in the contract. This goes beyond the proper use of extrinsic evidence when a contract is unambiguous, and the district court did not err when it limited its review to the four corners of the contract.

## CONCLUSION

[¶22] We find that the terms of the contract regarding the release of Hopkins as a guarantor on the Bank of the West loan and a release of the second mortgages on his properties were unambiguous. Further, the terms of the contract are not subject to special or technical usage that would require extrinsic evidence to determine the parties' intent. The district court's order granting summary judgment in favor of Bank of the West is affirmed.