# IN THE SUPREME COURT, STATE OF WYOMING

## 2023 WY 104

**OCTOBER TERM, A.D. 2023**

**October 31, 2023**

JOSH VAN VLACK,

Appellant
(Plaintiff),

v.

S-23-0065

EMMA VAN VLACK,

Appellee
(Defendant).

*Appeal from the District Court of Laramie County*
*The Honorable Thomas T.C. Campbell, Judge*

*Representing Appellant:*
    Toni E. Hartzel and Elizabeth B. Lance, Lance & Hall LLP, Cheyenne, Wyoming.

*Representing Appellee:*
    Linda J. Steiner and Abigail E. Fournier, Steiner, Fournier, Zook & Case, LLC, Cheyenne, Wyoming.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

*GRAY, J., delivers the opinion of the Court; BOOMGAARDEN, J., files a dissenting opinion, in which KAUTZ, J., joins.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**GRAY, Justice.**

[¶1]    Following the entry of a Stipulated Final Decree of Divorce (Stipulated Decree), Josh Van Vlack refinanced the marital home.  Emma Van Vlack believed the Stipulated Decree entitled her to half of the net equity in the home at the completion of the refinance.  Mr. Van Vlack disagreed, claiming she was only entitled to half the net proceeds if the house was sold.  Ms. Van Vlack filed a Rule 60 motion seeking to set aside the Stipulated Decree due to inadvertence or mistake.  The district court determined the Stipulated Decree unambiguously required Mr. Van Vlack to pay Ms. Van Vlack half the equity in the property from the refinance or sale of the home.  The district court granted Ms. Van Vlack's motion and entered its order requiring that any *equity* recognized through sale *or* refinance of the home is to be equally divided between Mr. Van Vlack and Ms. Van Vlack.  Mr. Van Vlack appealed.  We reverse and remand for an evidentiary hearing.

### ISSUES

[¶2]    Mr. Van Vlack presents one issue:

> Did the district court err when it granted Ms. Van Vlack's motion for relief thereby modifying the property awarded to the parties in their Stipulated Final Decree of Divorce?

We reframe his single issue into two:

> 1. Did the district court err when it determined the Stipulated Decree was unambiguous allowing a correction under Rule 60(b)(1)?
>
> 2. Did the record contain sufficient evidence to clarify the Stipulated Decree under Rule 60(a)?

### FACTS

[¶3]    Josh and Emma Van Vlack were married on September 15, 2012.  They had no children.  In December 2021, Mr. Van Vlack filed a pro se complaint for divorce.  Ms. Van Vlack accepted service of the complaint and filed her answer and counterclaim for divorce.

[¶4]    The next relevant document in the record is a Stipulated Final Decree of Divorce and Order Discharging Counsel.[1]  Paragraph 5(b) of the Stipulated Decree contained an

---

[1] Mr. Van Vlack retained counsel shortly before signing the Stipulated Decree.

1

express waiver of exchange of financial disclosures under W.R.C.P. 26.[2] The Stipulated Decree states the parties freely entered into the Stipulated Decree and that all terms were "fair and not unconscionable."

[¶5] The subject of the parties' dispute is paragraph 17 of the Stipulated Decree. It provides:

> a. The parties own real property at 1324 Bobcat Trail, Cheyenne, Wyoming . . . .
>
> i. This real property is awarded to [Mr. Van Vlack] as his sole and separate property and [Mr. Van Vlack] shall hold [Ms. Van Vlack] harmless thereon.
>
> ii. [Mr. Van Vlack] shall refinance the property in his separate name within ninety (90) days of the entry of this *Decree*. If [he] is unable to refinance the property into his name in that time frame, the property shall be immediately listed for sale. [Ms. Van Vlack] shall be entitled to one half (1/2) the net proceeds from the home and she shall receive her portion owing directly from the title company.
>
> iii. [Mr. Van Vlack] is solely liable for the mortgage and any other debts or liabilities associated with the home and [Mr. Van Vlack] shall hold [Ms. Van Vlack] harmless thereon.

[¶6] Mr. Van Vlack refinanced the property and no payment was made to Ms. Van Vlack. Ms. Van Vlack filed a Motion for Order Setting Aside Stipulated Final Decree of Divorce and Order Discharging Counsel, or, Alternatively Order Granting Defendant Relief from the Stipulate[d] Final Decree of Divorce and Order Discharging Counsel and Request for Expedited Hearing. Her motion claimed the Stipulated Decree "is clear that [she] was

---

[2] In pertinent part, W.R.C.P. 26(a)(1.1) provides:

> Initial disclosures in divorce actions. — In divorce actions the following initial disclosures are required in pre-decree proceedings, and in post-decree proceedings to the extent that they pertain to a particular claim or defense[.]

W.R.C.P. 26(a)(1.1). The required disclosures include the exchange of a detailed "schedule of financial assets," a "schedule of non-financial assets," to include, among other things, "the purchase price and the date of acquisition; (ii) the present market value; [and] (iii) any indebtedness relating to such asset[.]" W.R.C.P. 26(a)(1.1)(A), (B)(i)–(iii). As a result of the parties' agreement, none of this evidence was in the record prior to the Stipulated Decree, and the parties did not file disclosures in any the post-decree proceedings.

awarded one half (1/2) of the net proceeds regardless of [whether] the home was sold or refinanced." She alleged that when Mr. Van Vlack refinanced the home, he failed to provide her with one half of the net proceeds from that transaction. The motion requested relief under Rule 60(b)(1) and 60(b)(2) asserting the "verbiage in the [Stipulated Decree] needs to be clarified to accurately reflect the parties' agreement on the division of net equity after the sale *or* refinance of the marital home."[3]

[¶7]    Mr. Van Vlack objected. He asserted paragraph 17 did not require him to pay half the home equity if he refinanced. Instead, he claimed this provision unambiguously required him to pay Ms. Van Vlack half of the *net proceeds* from the sale of the home if he failed to refinance.

[¶8]    The district court set a hearing on the matter for September 7, 2022. Although the parties were prepared to present evidence, no evidence was received. The district court declined parol evidence, stating it would rely on the arguments of counsel and the existing record.

[¶9]    Ms. Van Vlack's counsel argued that the parties had agreed to split the "net equity or net proceeds" on the Bobcat Trail property equally. She averred that, prior to the Stipulated Decree, the home had been appraised, and based on the mortgage balance, "*we estimate* about $280,000 in equity." (Emphasis added.) Ms. Van Vlack's counsel maintained it would be unfair to interpret the provision to deny Ms. Van Vlack equity in the largest asset of the marriage.

[¶10]    To clarify Ms. Van Vlack's position, the district court asked, "[Y]our position is that . . . once the check was cut, he should have then interpreted the decree the way you do, and set over half of that money?" Counsel responded, "Agreed, Your Honor." Counsel added:

> I do think that the decree could have been worded to avoid that conflict, but that is why we come before the Court under Rule 60(b)(1) during which the Court can set aside the decree for mistake or good cause. We would ask that the Court set that decree aside for mistake and good cause as the decree does not accurately represent the parties' agreement that they were to split the net equity, the proceeds in their home, and it's really

---

[3] When Ms. Van Vlack received no payment, her counsel contacted the lender to determine the reason. The lender's representative explained she did not interpret the provision to require a payment of proceeds unless the house was sold. Ms. Van Vlack's request for relief under W.R.C.P. 60(b)(2) was based on "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Although not discussed at the hearing, the newly discovered evidence apparently was the lender's interpretation of paragraph 17.

3

not an equitable division of their assets at all if the decree is read as it has been interpreted [by Mr. Van Vlack].

[¶11] The district court then asked counsel for Mr. Van Vlack to explain his position. Counsel responded, "the plain language of that section, Section 17 states that the property is Mr. Van Vlack's sole and separate property, and that only if he is unable to refinance within 90 days does the property then go to sale, and then the proceeds are split between the parties." The district court then asked counsel:

> So if I exclude evidence on the parol evidence rule and decide on the basis of the document and the rule, you don't believe it qualifies under Rule 60. Well, first off [your argument is that] I shouldn't set aside the agreement, stipulated agreement. And, second, it doesn't qualify for the correction, modification, if you will, under Rule 60?

Counsel responded, "Correct, Your Honor."

[¶12] The district court issued its decision letter dated October 25, 2022:

> Plaintiff's argument that only sale, not refinance, entitled Defendant to one half of the home's equity makes no sense legally or grammatically.
>
> The Court is well aware of the sanctity of property distributions, particularly those created by settlement. But common sense leads to only one conclusion when a significant asset, apparently $240,000[4] equity in a home, is somehow legally of a different character if the money results from a refinance as opposed to a sale of the property. Both events result in some debt relief and the clearing of the Defendant from title or loan obligations (the only assertion of benefit argued here). There is no other distinction.
>
> There is no reason which appears in the Decree, the pleadings, or the arguments of counsel that lend an ounce of logic to an interpretation that leaves a $120,000 property division up to the chances of Plaintiff qualifying for refinancing. Beyond that this Court interprets the last sentence of the paragraph to modify both refinance and sale as, in either

---

[4] The origin of this number is unclear. There is no evidentiary record and Ms. Van Vlack's counsel suggested the estimated equity in the home was $280,000.

event, a title company closes, and they would be required to pay Defendant directly.

The Court is loath to reopen the Decree in its entirety. It could be concluded that the Court should set it aside as such a provision may not have been approved in the first instance. Such a drastic measure is not called for here as the request for relief under Rule (60)(b)(1) would be correction due to inadvertence in drafting, or a clear clerical mistake. While this may resemble a matter of "interpretation or clarification" the Court still believes it is fair to conclude mistake and inadvertence rather than require the Defendant to file a contempt motion which would call upon the Court to apply this same interpretation to Plaintiff's failure to pay over equity. The interests of judicial economy and the expense to the parties of requiring further pleadings of that nature also support this ruling.

. . . Defendant's motion for Rule 60 relief is GRANTED and paragraph 17.a.ii is corrected to reflect that any equity recognized through sale *or* refinance of the home is to be equally divided between Plaintiff and Defendant. The parties are to bear their own costs.

[Defendant's counsel] is directed to prepare the Order, incorporating this decision letter by reference and submit it pursuant to [R]ule 58 W.[R].C.P.

[¶13]  The parties were unable to agree on the form and content of the proposed order. Pursuant to Rule 58, Mr. Van Vlack objected to the proposed order because certain paragraphs referenced an amount of equity not supported by the record, and there was no evidence the parties agreed on the amount of equity in the property. Mr. Van Vlack further argued when the refinance was finalized, no equity was realized. He asserted when he refinanced the property, he refinanced for the remaining debt, and he received no "proceeds" to pay over to Ms. Van Vlack. He asked the district court to reject the proposed order and schedule the matter for an evidentiary hearing.

[¶14]  The district court did not respond to Mr. Van Vlack's Rule 58 objections and signed Ms. Van Vlack's proposed order. The order granting relief recited the reasoning from the court's decision letter and directed that "Paragraph 17(a)(ii) of the *Decree* shall be corrected to reflect that any *equity* recognized through sale *or* refinance of the home is to be equally divided between Plaintiff and Defendant." (Second emphasis added.)

5

[¶15] This timely appeal followed.

## *STANDARD OF REVIEW*

[¶16] Under Rule 60(b)(1),[5] the district court may provide relief from a final judgment due to "mistake, inadvertence, surprise, or excusable neglect." Normally, we review a district court's decision to grant or deny a motion brought under W.R.C.P. 60(b)(1) for an abuse of discretion. *Meiners v. Meiners*, 2019 WY 39, ¶ 9, 438 P.3d 1260, 1266 (Wyo. 2019).

[¶17] Here, the district court determined the Stipulated Decree was unambiguous and subject to only one interpretation. We review the district court's decision regarding the ambiguity of a Stipulated Decree based on contract as a matter of law. *Asherman v. Asherman*, 2009 WY 141, ¶ 8, 221 P.3d 302, 304 (Wyo. 2009) ("We start with the determination of whether the contractual language is clear or ambiguous. That determination is a question of law and, accordingly, we do not defer to the district court's decision." (citation omitted)).

## *DISCUSSION*

[¶18] Mr. Van Vlack contends that the district court erred for two reasons. First, he claims the Stipulated Decree clearly and unambiguously states the net proceeds are to be divided only if the property sold and not in the event of refinance. Next, he argues the district court's decision erroneously modifies the parties' agreement without an evidentiary basis.

[¶19] Ms. Van Vlack argues the district court correctly determined paragraph 17 of the Stipulated Decree, was unambiguous and that Ms. Van Vlack was entitled to half the equity in the home when Mr. Van Vlack refinanced. On appeal, she suggests the clarification was warranted only to "disabuse [Mr. Van Vlack] of his distorted understanding of Paragraph

---

[5] The portions of Rule 60 relevant to this case provide:

**Rule 60. Relief from a Judgment or Order.**
(a) *Corrections Based on Clerical Mistakes; Oversights and Omissions.* — The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice. But after an appeal has been docketed in the Supreme Court, and while it is pending, such a mistake may be corrected only with leave of the Supreme Court.
(b) *Grounds for Relief from a Final Judgment, Order, or Proceeding.* — On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
    (1) mistake, inadvertence, surprise, or excusable neglect[.]
W.R.C.P. 60(a)–(b)(1).

6

17" and to effectuate the parties' actual intent. She contends the district court did not modify the decree but correctly interpreted it.

## I. Did the district court err when it determined the Stipulated Decree was unambiguous allowing a correction under Rule 60(b)(1)?

[¶20] At issue is the district court's interpretation of the Stipulated Decree. "This Court applies the standards of contract construction to construe divorce property settlement agreements." *Wunsch v. Pickering*, 2008 WY 131, ¶ 16, 195 P.3d 1032, 1039 (Wyo. 2008); *Lipps v. Loyd*, 967 P.2d 558, 560–61 (Wyo. 1998). "This Court applies the same rule when construing a court order as used in construing a contract." *Tafoya v. Tafoya*, 2013 WY 121, ¶ 15, 309 P.3d 1236, 1240 (Wyo. 2013) (quoting *Glover v. Crayk*, 2005 WY 143, ¶ 10, 122 P.3d 955, 958 (Wyo. 2005) (citing *Brockway v. Brockway*, 921 P.2d 1104, 1106 (Wyo. 1996))). An interpretation of a contract begins with an attempt to ascertain the parties' intent as evidenced by the specific language of the agreement. *Hofhine v. Hofhine*, 2014 WY 86, ¶ 9, 330 P.3d 242, 245 (Wyo. 2014).

> The words used in the contract are afforded the plain meaning that a reasonable person would give to them. When the provisions in the contract are clear and unambiguous, the court looks only to the "four corners" of the document in arriving at the intent of the parties. In the absence of any ambiguity, the contract will be enforced according to its terms because no construction is appropriate.
>
> When contractual language is clear and unambiguous, the interpretation and construction of contracts is a matter of law for the courts. Whether a contract is ambiguous is a matter of law for the court to decide, and disagreement among the parties to a contract as to the contract's meaning does not mean that contract is ambiguous. Because we use an objective approach to interpret contracts, evidence of the parties' subjective intent is not relevant or admissible in interpreting a contract.
>
> Our rules of interpretation require that we interpret a *contract as a whole*, reading each provision in light of all the others to find their plain meaning. We presume each provision in a contract has a purpose, and we avoid interpreting a contract so as to find inconsistent provisions or so as to render any provision meaningless.

7

*Claman v. Popp*, 2012 WY 92, ¶¶ 26–28, 279 P.3d 1003, 1013 (Wyo. 2012) (emphasis added) (citations and quotation marks omitted). "An ambiguous contract 'is an agreement which is obscure in its meaning, because of indefiniteness of expression, or because a double meaning is present.'" *Brockway*, 921 P.2d at 1106 (quoting *Carlson v. Water Unlimited, Inc.*, 822 P.2d 1278, 1281 (Wyo. 1991)); 11 Samuel Williston, *Treatise on the Law of Contracts* § 30:4, at 59–60 (Richard A. Lord ed., 4th ed. 2012).

[¶21]   We begin by considering the plain meaning that a reasonable person would give to the words in paragraph 17.   Paragraphs 17(a)(i) and (iii) are not in dispute and unambiguously provide the home is awarded to Mr. Van Vlack and he is "solely liable" for the "mortgage and any other debts or liabilities associated with the home."   Paragraph 17(a)(ii), the focus of the parties' disaccord, is a single paragraph consisting of three sentences: (1) "[Mr. Van Vlack] shall refinance the property in his separate name within ninety (90) days of the entry of this *Decree*."   (2) "If [he] is unable to refinance the property into his name in that time frame, the property shall be immediately listed for sale."   (3) "[Ms. Van Vlack] shall be entitled to one half (1/2) the net proceeds from the home and she shall receive her portion owing directly from the title company."

[¶22]   The first sentence clearly requires Mr. Van Vlack to refinance the property within 90 days.   There is no requirement that the property be refinanced to realize equity in the property or that the home must be refinanced in an amount sufficient to pay any sum certain to Ms. Van Vlack.   The second sentence clearly states that in the event the home is not refinanced in 90 days it shall be immediately sold.   As in the case of the sentence addressing refinance, there is no requirement that the home be sold for an amount to realize equity or that a certain sum be paid to Ms. Van Vlack.   However, in the event of a sale, Mr. Van Vlack would receive a sum certain against which Ms. Van Vlack's one half the net proceeds could be calculated and paid in accord with the requirements of the third sentence.   The third sentence requires the title company to provide Ms. Van Vlack "one half (1/2) the *net proceeds* from the home."   (Emphasis added.)

[¶23]   The district court directed paragraph 17(a)(ii) of the Stipulated Decree shall be corrected to reflect that any *equity* recognized through sale *or* refinance of the home is to be equally divided between the parties.   The Stipulated Decree does not define net proceeds and it does not contain the word "equity."[6]

---

[6] Net proceeds and equity are not necessarily synonymous.   According to Merriam-Webster Dictionary, "proceeds," in the case of a sale, is "the total amount brought in."   *Proceeds*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/proceeds (last visited Oct. 5, 2023).   "Net," as an adjective, is defined as "free from all charges or deductions."   *Net*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/net (last visited Oct. 5, 2023).   Equity, specifically "home equity," is defined by the Cambridge Dictionary as "the amount of money that someone would receive if they sold their house, after paying what remains of the mortgage."   *Home Equity*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/home-equity (last visited Oct. 5, 2023).

[¶24]   Mr. Van Vlack's position is that the Stipulated Decree did not state he must receive a "profit" upon refinancing the home.  Ms. Van Vlack counters that refinancing implies a "profit" because Mr. Van Vlack would realize the existing equity on the home.  The language of the Stipulated Decree does not unambiguously support either of these positions.  The record sheds no light on this issue.  There is no evidence that the parties agreed that there was equity in the home and if so in what amount.  The record does not reveal when the home was purchased, the purchase price, an appraised value, or the remaining debt on the mortgage at the time of refinancing.  The Stipulated Decree contains no requirement that the property must be refinanced for more than the existing mortgage.  If Mr. Van Vlack limited his refinance to the amount of the existing mortgage, there would be no net proceeds from the transaction, but there could be equity in the home.

[¶25]   There are two possible interpretations of paragraph 17.  One is the view provided by the district court.  Another is Mr. Van Vlack's equally plausible reading—that Ms. Van Vlack agreed to forgo any payment from the refinance finding sufficient value in her release from liability on the mortgage.  Taken together, the provisions in paragraph 17 could mean that Ms. Van Vlack is entitled to one half the net proceeds received from the refinance or sale of the home.  They also could mean that Ms. Van Vlack is only entitled to one half the net proceeds if the home is sold.

[¶26]   Because the Stipulated Decree does not require Mr. Van Vlack to refinance for more than the mortgage and does not define net proceeds, it does not speak clearly to whether or not Ms. Van Vlack was entitled to any proceeds in the event of a refinance.  The Stipulated Decree is susceptible to two reasonable, yet contradictory interpretations.  *See Sheridan Fire Fighters Loc. No. 276, IAFF, AFL-CIO, CLC v. City of Sheridan*, 2013 WY 36, ¶ 23, 303 P.3d 1110, 1117 (Wyo. 2013) (Holding where "[t]he language is indefinite and susceptible to more than one plausible interpretation.  It is ambiguous."); *Casablanca v. Casablanca*, 212 A.3d 1278, 1287 (Conn. App. Ct. 2019) ("Because the language of the provision [in the dissolution settlement agreement] is susceptible to more than one reasonable interpretation, the court erroneously determined that the provision is unambiguous.").  We conclude that the Stipulated Decree is ambiguous as to whether Mr. Van Vlack was required to provide Ms. Van Vlack half the net proceeds in the event of refinance.

## II.   Did the record contain sufficient evidence to clarify the Stipulated Decree under Rule 60(a)?

[¶27]   It is presumed a divorce agreement merges into the divorce decree and that courts do not retain jurisdiction to modify property distributions.  *Meiners*, ¶ 11, 438 P.3d at 1266.  While the order granting relief does not mention Rule 60(a), the district court corrected the Stipulated Decree based on its finding of mistake.  The authority to correct a clerical mistake in a judgment is found in W.R.C.P. 60(a) which provides:

9

(a) *Corrections Based on Clerical Mistakes; Oversights and Omissions.* — The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice. But after an appeal has been docketed in the Supreme Court, and while it is pending, such a mistake may be corrected only with leave of the Supreme Court.

[¶28] "A clerical error is a mistake or omission of a mechanical nature apparent on the face of the record that prevents the judgment as entered from accurately reflecting the judgment that was rendered." *Meckem v. Carter*, 2014 WY 52, ¶¶ 12–13, 323 P.3d 637, 643 (Wyo. 2014) (quoting *Elsasser v. Elsasser*, 989 P.2d 106, 108 (Wyo. 1999)). "The rule 'is designed to clarify, as well as to correct, and is properly invoked to dispel either patent or latent ambiguities in a judgment.'" *Id.* (quoting *Elsasser*, 989 P.2d at 108).

[¶29] Our review of the district court's application of Rule 60(a) is a two-part process. "The first question is whether the correction or clarification of a judgment relates to a 'clerical mistake.'" *Meckem*, ¶ 13, 323 P.3d at 643 (quoting *Tafoya*, ¶ 7, 309 P.3d at 1238). If it does, the next question is whether the district court's order clarified or modified the original judgment. "Because both questions are matters of law, our review is *de novo*." *Id.*

> This Court has long held "the central purpose of Rule 60(a) is to effectuate the contemporaneous intent of the court and to ensure that the judgment reflects that intent." *Snyder v. Snyder*, 2021 WY 101, ¶ 12, 495 P.3d 876, 879 (Wyo. 2021) (citing *In re Kite Ranch, LLC v. Powell Family of Yakima, LLC*, 2008 WY 39, ¶ 18, 181 P.3d 920, 925 (Wyo. 2008)); *see also Spomer v. Spomer*, 580 P.2d 1146, 1149 (Wyo. 1978). Further, we have held "the rule is remedial and is to be liberally construed." *Elsasser v. Elsasser*, 989 P.2d 106, 108 (Wyo. 1999) (citation omitted); *see also Snyder*, ¶ 12, 495 P.3d at 879.

*Stone v. Stone*, 2023 WY 21, ¶ 8, 525 P.3d 634, 636 (Wyo. 2023).

[¶30] The clarification of the district court's judgment, however, rests on a record sufficient to support the court's interpretation of the parties' intent. *Eddy v. First Wyoming Bank N.A.-Lander*, 713 P.2d 228, 233–35 (Wyo. 1986). We find our decision in *Eddy* instructive here. In *Eddy*, a mistake "was made by counsel in drafting the judgment so that appellants were liable on the judgment from both January 28, 1982, and from May 23, 1983." *Id.* at 233. We determined this "mistake was not the deliberate result of judicial reasoning and determination. It was, instead, a clerical error." *Id.* We said, "[i]n many

10

cases 'clerical error' is easily remedied" where a decree is based on an underlying document, but the judgment clearly deviated from the instruments upon which they were intended to be based. *Eddy*, 713 P.2d at 234; *see also Stone*, ¶ 16, 525 P.3d at 638; *Wyland v. Wyland*, 2006 WY 93, ¶ 12, 138 P.3d 1165, 1169 (Wyo. 2006); *Elsasser*, 989 P.2d at 109.

[¶31] The problem in *Eddy* was that the district court's "clarification" of the judgment was not rooted in the stipulation on which the judgment was based. "The original judgment could only be clarified if its meaning was understood, and because it was clearly based upon the stipulation, it was absolutely necessary to examine the agreement contained in the stipulation in order to determine what was intended by the original judgment." *Eddy*, 713 P.2d at 234. We held:

> The original judgment failed to reflect the exact date from which Cates and Eddy were liable to the bank for $207,110.55. This mistake was a clerical error, as opposed to the deliberate result of judicial reasoning and determination, and was therefore subject to clarification under Rule 60(a). The actions of the court in rendering the judgment nunc pro tunc, however, did not clarify the original judgment which was entered pursuant to the stipulation, but rather altered the original judgment from what was intended. *In order for the original judgment to be clarified, evidence of the parties' intent when they entered into the stipulation must be taken.*

*Id.* at 235 (emphasis added).

[¶32] Here the district court concluded the Stipulated Decree required clarification because of mistake or inadvertence. However, as in *Eddy*, any mistake was not the deliberate result of judicial reasoning and determination.

[¶33] No evidence was received when the district court initially approved the parties' agreement or at the subsequent hearing on Ms. Van Vlack's motion. The district court's "clarification" was based on its assumption that there was a significant amount of equity value in the home, an assumption not supported by the record. Any clarification must be based on "evidence of the parties' intent when they entered into the stipulation." *Eddy* at 235. *See also Landry v. Landry*, 843 S.E.2d 491, 498 (S.C. 2020) (reversed and remanded "[b]ecause the parties' agreement . . . was ambiguous, [and] . . . neither at the initial hearing approving the parties' agreement nor the subsequent hearing on Husband's Rule 60(a) motion was any evidence received by the family court as to what the parties intended . . ."); *Mizrachi v. Mizrachi*, 385 P.3d 982, 990 (Nev. App. 2016) (district court erred in interpreting decree based on parties' stipulation because "[a]s used in the parties' parenting agreement, the term, 'the Jewish holidays,' is ambiguous. The record, however, does not

11

contain sufficient evidence to discern the parties' intent at the time of their agreement because the district court did not hold an evidentiary hearing to resolve the disputed factual issues.").

[¶34] We remand for further proceedings to determine the parties' original intent and to enforce the Stipulated Decree accordingly.

## *CONCLUSION*

[¶35] The Stipulated Decree is ambiguous and the record is insufficient to support the district court's interpretation. We reverse the district court's order granting relief and remand for further proceedings consistent with this opinion.

**BOOMGAARDEN, Justice,** dissenting, in which **KAUTZ, Justice,** joins.

[¶36]   I respectfully dissent from the majority's conclusion that Paragraph 17(a)(ii) in the Stipulated Final Decree of Divorce (Decree) is ambiguous and requires a remand for an evidentiary proceeding to determine the parties' intent.   My disagreement with the majority's conclusion is two-fold.   First, as a matter of de novo interpretation of the district court's Decree, I conclude the language of Paragraph 17(a)(ii) is unambiguous, because, when read in the context of the Decree as a whole, Paragraph 17(a)(ii) is subject to ***only one reasonable interpretation***—Ms. Van Vlack is entitled to half of the "net proceeds" or equity from the sale or refinance of the marital home.   Second, when analyzing whether the court correctly employed Rule 60 to ensure the Decree reflected the property division the court intended when it entered the Decree, we must look to evidence of the court's intent, not the subjective intent of the stipulating parties who, in seeking to enforce the Decree, now proffer differing interpretations.   Each of these reasons obviates any legal basis for an evidentiary hearing to attempt to determine what the parties intended the stipulated language in Paragraph 17(a)(ii) to mean.

[¶37]   We interpret language in a divorce decree as we would a contract. *Dowell v. Dowell*, 2012 WY 154, ¶ 18, 290 P.3d 357, 361 (Wyo. 2012) (citations omitted).   Thus, we take an objective approach when we decide whether language is ambiguous and consider "the disputed term in light of the actual language of the entire [decree.]" *Whitney Holding Corp. v. Terry*, 2012 WY 21, ¶ 14, 270 P.3d 662, 666 (Wyo. 2012) (citation omitted).   The decree's language is ambiguous if it is susceptible to more than one reasonable interpretation. *Id.*; *see also North Fork Land & Cattle, LLLP v. First Am. Title Ins. Co.*, 2015 WY 150, ¶ 14, 362 P.3d 341, 346 (Wyo. 2015); 17A C.J.S. *Contracts* § 404 (Aug. 2023 Update) ("Contract language is ambiguous when it is reasonably susceptible to more than one interpretation and reasonable persons could come to different conclusions about its meaning.").

[¶38]   The Decree we interpret here states it "is a full, complete, and final settlement between the parties" following the parties' "full and complete disclosures" and "full knowledge concerning the assets, liabilities, earning capacity, and health of the other party."   Such "full" disclosure and knowledge presumably would include the value of, and debt burdening, the real property addressed in Paragraph 17(a).

[¶39]   The Decree divided the parties' individual bank accounts, employment benefits, and debts; the few vehicles each had in their individual names or shared; and the personal property in each party's possession.   It also required Mr. Van Vlack to pay Ms. Van Vlack a relatively small ($6,000) equalization payment for a camper and road grader.   The Decree contains no provisional language and nowhere contemplates a contingent or variable property distribution.   The real property addressed in Paragraph 17(a), and any net proceeds derived from its refinance or sale, is the most substantial marital asset addressed in the Decree.

13

[¶40] Paragraph 17, subsection (a)(ii), expressly mandates that Mr. Van Vlack refinance the parties' property at 1324 Bobcat Trail "into his name" within 90 days of entry of the Decree. If he is unable to refinance within that time, the Decree requires him to list it for sale. That same subsection then unambiguously states Ms. Van Vlack is "entitled to one half (1/2) the net proceeds from the home." Black's Law defines "net proceeds" as "[t]he amount received in a transaction minus the costs of the transaction (such as expenses and commissions). — Also termed net balance." *Proceeds*, Black's Law Dictionary (11th ed. 2019). Defined as such, "net proceeds" is reasonably read to modify both preceding sentences which identify a refinance or a sale transaction, respectively.

[¶41] Equally important, reading the Decree as a whole, Paragraph 17(a)(ii) cannot be reasonably interpreted to create a variable, or contingent, property distribution depending on whether Mr. Van Vlack refinanced or sold the home. To do so would unreasonably assume the parties intended (and the court understood the parties intended) that Mr. Van Vlack could, by refinancing the property, preclude Ms. Van Vlack from realizing any value from the most substantial marital asset. Common sense dictates Ms. Van Vlack would not give up her half of the net proceeds or realized home equity simply because Mr. Van Vlack complied with the Decree's mandate that he first attempt to refinance. This is especially true where the Decree relieved Ms. Van Vlack from "the mortgage and any other debts or liabilities associated with the home" whether it was refinanced or sold. Because Paragraph 17(a)(ii) is subject to only one reasonable interpretation it is unambiguous. *Whitney Holding Corp.*, 2012 WY 21, ¶ 14, 270 P.3d at 666 (citation omitted). Because Paragraph 17(a)(ii) is unambiguous, there is no legal basis to remand for an evidentiary hearing to determine what the parties intended it to mean.[7] *See North Fork Land & Cattle*, 2015 WY 150, ¶ 14, 362 P.3d at 346 (stating parol evidence cannot be admitted to contradict the plain meaning of an unambiguous contract).

[¶42] Nor is the parties' intended meaning(s) relevant to our review of the district court's correction of Paragraph 17(a)(ii) pursuant to Rule 60(a). We presume, and the parties here do not dispute, "a divorce agreement merges into the divorce decree, and the agreement will no longer be given effect." *Meiners v. Meiners*, 2019 WY 39, ¶ 15, 438 P.3d 1260, 1267 (Wyo. 2019). "The [Decree] is an order of the [c]ourt and by the [c]ourt." *Tafoya v. Tafoya*, 2013 WY 121, ¶ 22, 309 P.3d 1236, 1241 (Wyo. 2013). Thus, in considering

---

[7] There also is no basis, as the majority suggests, to take evidence about how much equity was in the home when Mr. Van Vlack refinanced it. The Decree states the parties had full knowledge of marital assets and liabilities. The amount of net proceeds or equity, if any, from the refinance of the home is not relevant to the district court's or our interpretation of Paragraph 17(a)(ii), or our determination whether the district court correctly employed Rule 60. The court simply ordered that "[P]aragraph 17(a)(ii) of the *Decree* shall be corrected to reflect that **any** equity recognized through sale *or* refinance of the home is to be equally divided between Plaintiff and Defendant." (Emphasis added). Should the parties dispute the amount of "any equity recognized through sale or refinance of the home," they can raise that issue in a subsequent enforcement proceeding. *See Jenkins v. Jenkins*, 2020 WY 120, ¶¶ 5–6, 11, 472 P.3d 370, 372–73 (Wyo. 2020) (remanding a contempt action for the district court to clarify which spouse was responsible for refinancing the marital home); *McAdam v. McAdam*, 2014 WY 123, ¶ 13, 335 P.3d 466, 470 (Wyo. 2014).

14

whether the district court correctly clarified the Decree pursuant to Rule 60(a), we consider the district court's intent at the time the Decree was entered, not the parties' intent. *See id.* ¶ 11, 309 P.3d at 1239. "[T]he central purpose of Rule 60(a) is to effectuate the contemporaneous intent of the court and to ensure that the judgment reflects that intent." *Id.*; *Stone v. Stone*, 2023 WY 21, ¶ 8, 525 P.3d 634, 636 (Wyo. 2023) (citation omitted)).

[¶43]   The district court's unequivocal interpretation of Paragraph 17(a)(ii) is evidenced by its October 25, 2022, decision letter wherein it stated "[Mr. Van Vlack's] argument that only sale, not refinance, entitled [Ms. Van Vlack] to one half of the home's equity makes no sense legally or grammatically." The court explicitly "interpreted the last sentence of Paragraph 17[(a)(ii)] to modify both refinance and sale" and it corrected any latent ambiguity in Paragraph 17(a)(ii) to reflect its intent to equally divide "any equity recognized through sale *or* refinance of the home."[8]

[¶44]   Because the district court corrected the stipulated language itself, this is not a case like *Eddy*, where a date specified in the original judgment was in no way connected to the stipulated language on which the judgment was based. *Eddy v. First Wyoming Bank N.A.-Lander*, 713 P.2d 228, 232–33 (Wyo. 1986). Under those circumstances, this Court concluded the district court's nunc pro tunc judgment "altered the original judgment so that it no longer was based upon the stipulation of the parties[,]" and the court could not clarify or correct the original judgment absent "evidence of the parties' intent when they entered into the stipulation." *Id.* at 234–35. Where, as here, the district court directly addressed its interpretation of stipulated language, evidence of the parties' intended meaning(s) is inapposite. W.R.C.P. 60(a) allowed the district court to correct its Decree to state what it intended when it entered that Decree—that any equity in the home was to be divided equally between the parties whether Mr. Van Vlack refinanced or sold the property.

[¶45]   For these reasons, I would affirm the district court's decision.

---

[8] To mitigate the need for post-judgment Rule 60 proceedings, and to provide a full record for review in the event such proceedings occur, we should encourage trial judges to carefully review each provision of a divorce agreement to identify any possible ambiguities, then clarify or correct them in the Decree, and memorialize the court's interpretation in the record. This practice is particularly important where, as here, one or more of the parties appears pro se. *See Long v. Long*, 2018 WY 26, ¶ 24, 413 P.3d 117, 125 (Wyo. 2018) ( "[A] district court 'is not bound to accept a stipulation of the parties'" (citation omitted)); *see also Grosz v. Grosz*, 506 P.2d 46, 49 (Wyo. 1973) ("It is well recognized in this jurisdiction that trial courts exercise a discretion in making divorce settlements[.]" (citation omitted)).