# IN THE SUPREME COURT, STATE OF WYOMING

## 2024 WY 96

### APRIL TERM, A.D. 2024

### September 5, 2024

GUY MORRISON, III,

Appellant
(Defendant),

v.

S-23-0267

TAMI HINSON-MORRISON,

Appellee
(Plaintiff).

*Appeal from the District Court of Campbell County*
The Honorable Matthew F.G. Castano, Judge

*Representing Appellant:*
Guy Morrison, III, pro se on opening brief, Donna D. Domonkos, Domonkos & Thorpe, LLC, Cheyenne, Wyoming.

*Representing Appellee:*
Codie D. Henderson and Cole L. Gustafson, Davis & Cannon, LLP, Sheridan, Wyoming.

*Before FOX, C.J., and BOOMGAARDEN, GRAY, FENN, and JAROSH, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**JAROSH, Justice.**

[¶1]    Guy Morrison, III (Husband), challenges various aspects of the property division in the decree divorcing him from Tami Hinson-Morrison (Wife), including the enforceability of a premarital agreement and determinations regarding equitable distribution.  We affirm.

## ISSUES

[¶2]    Husband raises seven issues on appeal, but we rephrase and consolidate them as follows, and include Wife's separate issues:

1. Should this Court summarily affirm the district court due to deficiencies in Husband's pro se brief?
2. Did the district court err in interpreting and applying the Premarital Agreement, including in its findings related to gifts, commingling, and abandonment?
3. Did the district court abuse its discretion in its equitable distribution of the parties' assets and debts?
4. Should this Court award Wife attorney fees and costs incurred on appeal?

## FACTS AND PROCEDURAL BACKGROUND

[¶3]    Husband and Wife married in 2007 and had no children.  On the day of the marriage, but before the ceremony, the parties executed a Premarital Agreement (the Agreement) drafted by Husband's attorney.  The Agreement stated that in the event of a divorce:  a) each party would retain his or her individual property owned on the date of the Agreement; b) each party would retain any property acquired out of the proceeds or by the appreciation of property owned on the date of the Agreement; and c) each party would retain any property acquired by gift or inheritance.  The Agreement also included lists of the parties' assets and liabilities.  When the parties executed the Agreement, Wife owned two commercial real estate businesses, Capital Development Group, Inc. (Capital), and Golden Development, LLC (Golden).  She also owned a home in Gillette, Wyoming (Gillette residence).  Husband's assets were four certificates of deposit worth approximately $1 million.

[¶4]    After they married, Husband formed three oil and gas companies, the Gas Max, LLC (Gas Max); Vertical Injection Pumping Systems, LLC (VIPS); and Legacy Separators, LLC (Legacy).[1]  When Husband formed Legacy in 2012, he transferred a 10% interest in Legacy to Wife, who worked for Legacy part time.  Husband made

---

[1] It appears the trial court inadvertently added an "x" to the entity named Gas Max, LLC.  In addition, and although the district court refers to it as Legacy Separators, Inc., it appears from the record Legacy Separators is a limited liability company.

1

improvements to the Gillette residence after they married: He built a shop for $60,000, installed a fence for $10,000, and replaced a basement beam for $12,000. In 2012, Wife wrote four checks totaling $100,000 out of a Legacy bank account. She testified she did so because she was concerned Husband was running low on funds and would deplete Legacy's assets. She further testified she eventually returned the funds to Husband by investing the money in VIPS, while Husband testified he knew nothing of the transactions. In 2021, Husband wrote a $137,500 check out of his personal trust account to Wife's company, Golden, to assist in developing lots previously purchased on Decoy Avenue in Gillette (Decoy Avenue lots). At trial, Husband testified he was supposed to be deeded a 50% interest in each of the lots, but never was. According to Wife, the plan to develop the Decoy Avenue lots proved unworkable, but Husband told her to keep the $137,500 as her 10% interest in a settlement Legacy received.

[¶5]    On August 15, 2022, Wife filed for divorce. Prior to trial, Husband filed a *Motion for Allocation of Funds* asking the district court to require Wife to amend her 2021 tax return and remove a credit for a $140,000 estimated tax payment made by him that Wife claimed on her tax return. Husband paid the $140,000 prepayment out of his separate account.[2] Wife asked the court to deny the motion and either incorporate the tax issue into the division of the marital estate or order the parties to file a joint return, as they had done in the past. The district court ordered the parties to "file an amended joint tax return – married filing jointly – for the 2021 tax year . . . as soon as reasonably possible."

[¶6]    The parties tried the case to the bench on July 17, 2023. Neither party requested special findings of fact under Wyoming Rule of Civil Procedure (W.R.C.P.) 52(a)(1)(A). On August 14, 2023, the district court issued its Decision Letter, which it later incorporated into a final Decree of Divorce (Decree). The court concluded the Agreement was clear and unambiguous, "except to the extent that it omits what, if any, effect the commingling of funds may have on its application." Nevertheless, the district court decided the issue of commingling was moot because it could divide the parties' property in accordance with the Agreement's express terms and Wyoming's equitable distribution statute, Wyo. Stat. Ann. § 20-2-114 (LexisNexis 2023). The district court then awarded Wife Golden and Capital, and ruled that "all bank accounts, vehicles, real estate, and debt owned by [Golden] and [Capital] shall not be allocated to the individual parties in this matter," but would remain assets of the respective companies. The court additionally ruled "any contributions made by Husband to the property allocated to the Wife as her individual property in the pre-marital agreement will not be compensated and will be viewed as spousal gifts." This included the $137,500 Husband paid from a personal trust account to Golden for development of the Decoy Avenue lots. The court made no finding regarding the $100,000

---

[2] Husband alleged his accountant asked him to provide an estimated tax payment of $140,000 to the IRS with his social security number on the check "so the IRS would be able to identify where to apply the tax payment." According to Husband, the accountant credited both parties' individual tax returns with the $140,000 payment and alerted the parties that one of the returns would need to be amended to delete the $140,000 credit.

in checks that Wife alleges she wrote from Legacy's account and later returned to Husband via VIPS.

[¶7] The district court divided the parties' remaining assets not addressed in the Agreement in accordance with § 20-2-114(a). Specifically, it awarded Husband the three businesses he formed after the parties married: Legacy, VIPS, and the Gas Max, with Wife retaining her 10% interest in Legacy. The district court awarded Husband a residence in Arkansas, a 2013 Chevy Camaro (which was jointly titled), certain bank accounts and investment accounts, his revocable trust, and other miscellaneous assets. Along with Golden and Capital and her interest in Legacy, Wife received the Gillette residence (and its mortgage), certain bank and investment accounts, and her individual trust. The court noted it did not hear testimony regarding some investment accounts and therefore "[allocated] such accounts in accordance with Plaintiff's Exhibit 38 that summarized the parties' property and debt acquired prior to and during the marriage." The court incorporated Plaintiff's Exhibit 38 into its Decision Letter. The parties retained certain other personal property. The district court ruled each party was responsible for 50% of joint credit card debt and 100% of his or her own credit card debt.

[¶8] Finally, the district court also ruled (again) on the tax issue and ordered the parties to file joint returns for 2021 and 2022 and "be responsible for their share of any tax obligation in proportion to their individual income." It also ordered the parties to bear their own attorney's fees and costs.

[¶9] This appeal followed.

## DISCUSSION

### I. *Summary Affirmance.*

[¶10] Wife argues this Court should refuse to consider Husband's pro se brief and summarily affirm the district court because Husband's brief does not comply with the Wyoming Rules of Appellate Procedure (W.R.A.P.). "We have discretion whether to summarily affirm when a brief is deficient under the rules of appellate procedure." *Burke v. State,* 2024 WY 33, ¶ 8, 545 P.3d 440, 442 (Wyo. 2024) (citing *Anderle v. State*, 2022 WY 161, ¶ 18, 522 P.3d 151, 154 (Wyo. 2022)). Pursuant to W.R.A.P. 1.03(b), this Court may impose sanctions, including summary affirmance, on pro se litigants who fail to comply with these rules. *Byrnes v. Harper,* 2019 WY 20, ¶ 3, 435 P.3d 364, 366 (Wyo. 2019). Although we afford a certain leniency to pro se litigants, they must reasonably adhere to the procedural rules and requirements of this Court. *Id.*

[¶11] Wife lists the following deficiencies in Husband's brief: 1) failing to attach a copy of the judgment, decision letter, and statement of costs; 2) failing to include his telephone number; 3) using the wrong font size; and 4) improperly stating the name of an out-of-state

attorney who was not admitted *pro hac vice*. Wife alleges the following procedural deficiencies by Husband: 1) designating the record late; 2) failing to timely and properly serve the brief; and 3) failing to file the brief electronically. Finally, Wife argues Husband's brief lacks cogent argument supported by legal authority.

[¶12] We decline to summarily affirm the district court's decision and/or reject Husband's appeal entirely. Although Husband's brief is not compliant with some aspects of the rules of appellate procedure, it is sufficient for us to discern the nature of the issues raised. *See, e.g., Young v. State,* 2002 WY 68, ¶ 9, 46 P.3d 295, 297 (Wyo. 2002) (declining to summarily affirm although pro se defendant's brief was deficient in certain respects). Given Husband provides some citations and some cogent argument, we will approach the sufficiency of Husband's legal arguments issue-by-issue.

[¶13] Wife also argues this Court should refuse to consider Husband's pro se brief because he filed it while still represented by appellate counsel.[3] In support, Wife cites W.R.C.P. 11(a), which requires counsel of record to sign every court-filed brief. "The purpose of W.R.C.P. 11 is to deter baseless filings and streamline the administration and procedure of courts." *Dewey v. Dewey,* 2001 WY 107, ¶ 16, 33 P.3d 1143, 1147 (Wyo. 2001) (citations omitted). "On its face, Rule 11 does not apply to appellate proceedings." *Id.,* ¶ 28, 33 P.3d at 1150 (citing *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 393, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990)). Wife also cites to W.R.A.P. 14.05, which applies to criminal appellants, and to cases where both counsel and client filed briefs, none of which apply here.

## II. The Premarital Agreement.

[¶14] Husband argues the district court erred in finding he made gifts to Wife under the Agreement. He also asserts that because the parties commingled assets and the Agreement was silent as to commingling, the district court should have declared the Agreement abandoned and distributed all the parties' property pursuant to § 20-2-114(a). In addition, Husband asserts any traceable "contributions" he made to assets received by Wife should be returned to him.

[¶15] Prenuptial or antenuptial agreements are valid and enforceable in Wyoming and are governed by the same rules of construction applicable to other contracts. *Seherr-Thoss v.*

---

[3] Prior to Husband filing his opening brief, his then-counsel of record, Anna Reeves Olson of Long Reimer Winegar, LLP, moved to withdraw. We denied the motion, but called attention to W.R.A.P. 19.02, which would have permitted counsel to withdraw upon a submission of a client acknowledgement "stating a desire to proceed pro se." When he filed his opening brief, Husband was still represented by Ms. Olson. However, Husband filed the brief with a cover page stating he was "pro se" and received "assistance from" Larry Steidley, an attorney from Oklahoma. Husband is the only person who signed the opening brief. Donna D. Domonkos later entered her appearance, replacing Ms. Olson as attorney of record, and signed and filed Husband's reply brief.

*Seherr-Thoss*, 2006 WY 111, ¶ 11, 141 P.3d 705, 712 (Wyo. 2006) (quoting *Lund v. Lund,* 849 P.2d 731, 739 (Wyo. 1993)). "Contract interpretation is a matter of law which we consider de novo." *Hensel v. DAPCPA RPO, LLC,* 2023 WY 84, ¶ 12, 534 P.3d 460, 464 (Wyo. 2023). Our goal in interpreting contracts is to "ascertain the parties' intent as evidenced by the specific language of the agreement." *Van Vlack v. Van Vlack,* 2023 WY 104, ¶ 20, 537 P.3d 751, 757 (Wyo. 2023) (citing *Hofhine v. Hofhine*, 2014 WY 86, ¶ 9, 330 P.3d 242, 245 (Wyo. 2014)).

[¶16] According to our established standards for interpretation of contracts,

> [t]he words used in the contract are afforded the plain meaning that a reasonable person would give them. When the provisions in the contract are clear and unambiguous, the court looks only to the "four corners" of the document in arriving at the intent of the parties. In the absence of any ambiguity, the contract will be enforced according to its terms because no construction is appropriate.

*Van Vlack,* ¶ 20, 537 P.3d at 757 (citation omitted). Unless a contract is ambiguous, a court should consider only the four corners of the contract to derive the parties' objective intent. *TEP Rocky Mountain LLC v. Rec. TJ Ranch Ltd. P'ship*, 2022 WY 105, ¶ 45, 516 P.3d 459, 474 (Wyo. 2022). Accordingly, when the contracting parties leave a term out of their agreement, this Court deems the omission intentional. *Evans v. Moyer,* 2012 WY 111, ¶ 29, 282 P.3d 1203, 1212 (Wyo. 2012) (quoting *Mathisen v. Thunder Basin Coal Co.,* 2007 WY 161, ¶ 16, 169 P.3d 61, 66 (Wyo. 2007)).

[¶17] Furthermore, "[w]here a contract is silent on a particular matter that easily could have been drafted into it, a court should refrain from supplying the missing language under the pretext of contract interpretation." *In re CDR,* 2015 WY 79, ¶ 30, 351 P.3d 264, 270-271 (Wyo. 2015) (quoting *Herling v. Wyoming Machinery Co.,* 2013 WY 82, ¶¶ 35-36, 304 P.3d 951, 960 (Wyo. 2013)). We will not rescue parties from the consequences of a poorly made bargain or a poorly drafted agreement by rewriting a contract under the guise of construing it. *Id.,* ¶ 30, 351 P.3d at 271 (citing *Hunter,* ¶ 23, 253 P.3d at 503); *see also Gumpel v. Copperleaf Homeowners Ass'n, Inc.,* 2017 WY 46, ¶ 42, 393 P.3d 1279, 1293 (Wyo. 2017) ("It is not the function of this Court or any court to write terms into a contract.").

[¶18] In contrast to our de novo standard of review for questions of contract interpretation, we defer to the district court's factual findings unless they are clearly erroneous. *Claman v. Popp,* 2012 WY 92, ¶ 22, 279 P.3d 1003, 1012 (Wyo. 2012). Factual findings are clearly erroneous when, although there is evidence to support them, the reviewing court is left with the definite and firm conviction upon review of the entire record that the district court made a mistake. *Id.* To the extent findings of fact are in question, we consider only the evidence

5

of the successful party, ignore the evidence of the unsuccessful party, and grant the successful party every favorable inference that can fairly be drawn from the record. *Holland v. Holland,* 2001 WY 113, ¶ 8, 35 P.3d 409, 412 (Wyo. 2001).

[¶19]  "We do not substitute ourselves for the trial court as a finder of facts; instead, we defer to those findings unless they are unsupported by the record or erroneous as a matter of law." *Meiners v. Meiners,* 2019 WY 39, ¶ 8, 438 P.3d 1260, 1266 (Wyo. 2019) (quoting *Galiher v. Johnson*, 2018 WY 145, ¶ 6, 432 P.3d 502, 507 (Wyo. 2018)) (other citations omitted).

[¶20]  Finally, neither party requested special findings of fact under W.R.C.P. 52(a)(1)(A). When no such request is made, "it shall not be necessary for the court to state its findings, except generally for the plaintiff or defendant." W.R.C.P. 52(a)(1). In the absence of special findings of fact, this Court must consider that the trial court's judgment carries with it every finding of fact to support that judgment. *Barney v. Barney,* 705 P.2d 342, 345 (Wyo. 1985); *see also, Bishop v. Bishop,* 944 P.2d 425, 428 (Wyo. 1997) ("the parties must request special findings of fact if they are desired, and in the absence of a special finding, a general finding by the trial court carries with it every finding of fact supported by the record") (citing *Deroche v. R.L. Manning Co.,* 737 P.2d 332, 335 (Wyo. 1987)).

### A. Interpretation and Application of Agreement in General

[¶21]  In relevant part, the Agreement states:

> 3.　Assets as Separate Property. Each of the parties agree that the property described in this paragraph shall remain the separate and solely owned property of its owner:
> A. All property, whether real or personal, owned by either party at the effective date of this agreement;
> B. All property acquired by a party out of the proceeds or income from property owned at the effective date of this Agreement, or attributable to appreciation in value of such property, whether the enhancement is due to market condition or to the services, skills, or efforts of its owner or anyone else;
> C. All property acquired by either party by gift, devise, bequest, or inheritance.
> . . .
>
> 7.　Disposition of Property to the Other. Notwithstanding any other provision of this Agreement, either party may, by appropriate written instrument only, transfer, give, convey, devise or bequeath any property to the other; neither party intends by this Agreement to limit or restrict in any way the

right to receive any such transfer, gift, conveyance, devise, or bequest from the other except as herein stated.

[¶22]   In its Decision Letter, the district court found the Agreement clear and unambiguous and it was therefore obligated to enforce it:

Pursuant to Wyoming precedent, a "trial court is obligated to enforce agreements of parties to marriage, particularly antenuptial agreement, since they are entitled to that certainty.["] *Seherr-Thoss v.* [*Seherr*]*-Thoss,* 141 P.3d 705, 712 (Wyo. 2006); [s]ee also *Lund v. Lund,* 849 P.2d 731, 739 (Wyo. 1993). The purpose of "contract interpretation is to discern the intention of the parties to the document." *Pope v. Rosenberg,* 361 P.3d 824, 830 (Wyo. 2015). A contract must be read in whole and "each provision [must be read] in light of all the others to find their plain meaning." *Sheridan Fire Fighters Local No. 276, IAFF, AFL-CIO, CLC v. City of Sheridan,* 303 P.3d 1110, 1115 (Wyo. 2013). Courts presume each provision within a contract has a purpose and should "avoid interpreting a contract so as to find inconsistent provision[s] or so as to render any provision meaningless." *Id.*

Moreover, "when the provisions in the contract are clear and unambiguous, the court looks only to the 'four corners' of the document in arriving at the intent of the parties." *Union Pacific Resources Co. v. Texaco, Inc.,* 882 P.2d 212, 218-19 (Wyo. 1993). Contractual ambiguity arises when language is "obscure in its meaning," when it provides "indefiniteness of expression," or when it creates "a double meaning." *Amoco Prod. Co. v. Stauffer Chem. Co. of Wyo.,* 612 P.2d 463, 465 (Wyo. 1980) (internal quotation marks and citation omitted). Further, "where a contract is silent on a particular matter that easily could have been drafted into it, a court should refrain from supplying the missing language under the pretext of contract interpretation." *In re CDR,* 351 P.3d 264, 270-271 (Wyo. 2015).

The parties executed a pre-marital agreement on August 25, 2007. PL Ex. 1. The Court's review of the pre-marital agreement appears clear and unambiguous except to the extent that it omits what, if any, effect the commingling of funds may have on its application. Based on testimony at trial, both parties intended to keep their property separate and under sole

7

ownership of the property owner. However, after execution, the parties did not anticipate the issue of commingling separate assets. Based on the Wyoming Supreme Court's decision in *In re CDR,* this court will not supplement language of the pre-marital agreement and will divide property in accordance with the agreement. In light of this court's rulings hereinbelow, the issue of the effect of commingling of assets is effectively moot.

The language of the pre-marital agreement is simple and straight forward. It is understandable to parties of reasonable intelligence who are familiar with business affairs, as both these parties are. Reviewing the language of the pre-marital agreement, all bank accounts, vehicles, real estate[ ], and debt owned by Golden Development Group, Inc. and Capital Development, LLC shall not be allocated to the individual parties in this matter. In addition, any contributions made by Husband to the property allocated to the Wife as her individual property in the pre-marital agreement will not be compensated and will be viewed as spousal gifts.

[¶23] We agree the Agreement is clear and unambiguous. Its terms are simple and straightforward. It addressed the parties' financial positions as of the date of signing, stated each parties' assets "shall remain" the property of the owner, and provided the parties could transfer, give, or convey property to the other through appropriate written instrument. Provided the transactions between Husband and Wife fell under the Agreement's express terms, the Agreement governed distribution of assets and debts.

## B. Gifts

### 1. $137,500 payment to Golden

[¶24] Husband asserts the district court erred in finding the $137,500 check written by Husband from his trust account to Golden was a gift to Wife. He claims he contributed $137,500 to the project to develop the Decoy Avenue lots in exchange for an interest in the lots. He also argues the $137,500 was not a gift under the Agreement because there was no appropriate written instrument and Golden was not a party to the case.

[¶25] Spousal gifts are addressed in Paragraph 7 of the Agreement, quoted above. Applying Wyoming law, the district court concluded when Husband wrote the $137,500 check to Golden, it was presumed to be a gift to Wife:

[W]hen title to real estate [i]s taken in the names of both spouses but only one spouse pa[ys] for it, there [is] a rebuttable

8

> presumption that a fifty percent interest [i]s intended as a gift to the nonpaying spouse. It follows, then, that when a spouse pays for real property and titles it in the other spouse's name, there is a presumption that the entire property is intended as a gift.

*Barton v. Barton,* 996 P.2d 1, 4 (Wyo. 2000). In *Barton,* we also cited to *Tyler v. Tyler,* 624 P.2d 784, 785-86 (Wyo. 1981). There, the husband and wife similarly entered into an antenuptial agreement which provided for "separate ownership, enjoyment and disposal of their separate properties, whether acquired before or during their marriage." *Id.* Nevertheless, we applied the "general rule that when title to real property is taken in the name of both spouses and the consideration therefor is furnished by only one of them, there is a rebuttable presumption that a gift of one-half interest therein is intended for the other spouse …" and found sufficient evidence "to support the district court's finding that a gift of one-half of the property was intended and made by husband to wife." *Id.*

[¶26] "The inquiry into whether or not the presumption of a gift has been rebutted is, by necessity, a factual one dependent upon the particular circumstances surrounding the conveyance." *Seherr-Thoss,* ¶ 17, 141 P.3d at 714 (citation omitted). Consistent with *Barton* and *Tyler,* the district court here found Husband's transfer of the funds to Golden was presumed to be a gift to Wife. It emphasized the Agreement made clear "all premarital property of the spouses will remain their separate property, which applies to Wife's sole interest in Golden." The record supports the district court's finding regarding Wife's ownership of Golden. Wife formed Golden about a year prior to the parties' marriage and remained its sole owner throughout. The Decoy Avenue lots were titled to Golden before Husband contributed the $137,500. Husband wrote the $137,500 check to Golden as a contribution to a project to develop the Decoy Avenue lots. At no time did Wife agree to convey any ownership in either Golden or the lots to Husband. When the economics of the project became unworkable, Husband did not ask for the money back; instead, he told Wife to keep it. While Husband asserts he "testified at trial that he believed his name was to be placed on the lots," the district court expressly found he knew how to "create joint ownership in a business or in a piece of real property…," but never made any effort to retitle the lots or correct any alleged error in titling. The district court also found Husband did not raise the issue until the divorce proceedings.

[¶27] These findings are supported by the record and were not clearly erroneous. Considering Wife's evidence, giving her every favorable inference, and leaving out any conflicting evidence presented by Husband, we conclude the district court properly determined Husband did not overcome the presumption that his $137,500 contribution to Golden was a gift to Wife.

[¶28] Husband also argues the $137,500 could not be a gift under Paragraph 7 of the Agreement because it was not made through an "appropriate written instrument." The

Agreement does not specify what constitutes an "appropriate written instrument." However, a check is a written instrument. *See Check,* BLACK'S LAW DICTIONARY (10th ed. 2009) ("'. . . a check is an instrument in the form of a bill of exchange, drawn on a bank . . . and payable on demand'" (quoting Francis B. Tiffany, *Handbook of the Law of Banks and Banking* (1912)). *See also, Anderson v. State,* 196 P. 1047, 1050 (Wyo. 1921) (indicating a bank check is a written instrument), and Wyo. Stat. Ann. §§ 9-4-206(a), 34-24-106(a), 34-24-132(b), and 40-22-102(a)(xv) (LexisNexis 2023) (all indicating bank checks are written instruments). Given the court determined the check evidenced a gift from Husband to Wife, we conclude the check satisfied Paragraph 7's "appropriate written instrument" requirement.

[¶29]   Finally, Husband challenges the district court's ruling of a gift to Wife because Golden is not a party to the case, and jurisdiction over it was therefore absent. In support, Husband cites this Court's decision in *Nielson v. Thompson*, 982 P.2d 709, 712 (Wyo. 1999) for the proposition that the only proper parties to a divorce action are the spouses seeking a divorce. *Nielson* involved questions about a third-party creditor's ability to intervene in a divorce action. It is inapplicable to this case. The only two parties over whom the district court exercised jurisdiction here were Husband and Wife.

[¶30]   The district court's determination that Husband's $137,500 payment to Golden was a gift to Wife is not clearly erroneous or contrary to law.

## 2. **$100,000 "Gift"**

[¶31]   Husband also contends wife "converted" or even "embezzled" $100,000 from Legacy when she wrote four $25,000 checks from one of its accounts, and the district court erred in concluding the $100,000 was a gift. However, the district court never concluded Husband made a $100,000 gift to Wife. As the district court stated in its Decision Letter, Wife testified she wrote and cashed four $25,000 checks from the Legacy account and deposited the money in a safe deposit box out of concern Husband "spent [money] like water" and "would end up broke." She then testified that when Husband was out of money but wanted to start a new company, VIPS, she contributed the $100,000 to VIPS. While Husband testified he did not know about those transactions, he also testified as follows:

> Q. And do you recall [Wife] issuing a check for the full
> $100,000 back to you with the memo: Fund VIP?
> A. She put a hundred thousand in there, yes.
> Q. She put $100,000 into Vertical Injection?
> A. Yes.

[¶32]   The district court did not further discuss this $100,000 in its order allocating the parties' property and debts. It certainly did not conclude it was a gift. However, it did award VIPS to Husband as part of the property division. By leaving the $100,000 out of

10

the property distribution, the trial court necessarily accepted Wife's testimony that she returned the money by depositing it into VIPS' account. The trial court is in the best position to assess the witnesses' credibility and weigh their testimony. *Raymond v. Raymond,* 956 P.2d 329, 332 (Wyo. 1998). We give considerable deference to its findings. *Id.* Given the parties' testimony at trial, this Court will not interfere with the district court's treatment of the $100,000, as sufficient evidence existed to support it.

## C. Commingling and Abandonment

[¶33]  Husband also claims the district court erred by declining to find Husband and Wife commingled their assets. Specifically, he asserts he did not make gifts to Wife when he contributed funds to assets eventually set over to her, including the $137,500 payment to Golden, improvements to the Gillette residence, and "seed" money for her businesses. Husband claims instead their assets became commingled and the district court should have inferred a commingling provision in the Agreement to give him an interest in the assets, divided everything under § 20-2-114(a), or concluded the parties abandoned the Agreement.

[¶34]  In addition to finding the $137,500 check to Golden was a gift, the district court found "any contributions made by Husband to the property allocated to Wife as her individual property in the pre-marital agreement will not be compensated and will be viewed as spousal gifts." It did so after concluding the Agreement was clear and unambiguous and it would be improper to supplement it with a commingling provision because it could divide property in accordance with its express terms. It also concluded the issue of commingling was moot considering the gift determinations. We agree in both respects. It would have been improper for the district court to supplement the Agreement by implying a commingling provision in the Agreement and distributing the assets accordingly. *In re CDR,* ¶ 30, 351 P.3d at 270-271 (Wyo. 2015); *Gumpel,* ¶ 42, 393 P.3d at 1293. In addition, a commingling determination became unnecessary once the district court concluded distribution of all the assets and debts was governed by the Agreement and § 20-2-114(a).

[¶35] Regarding Husband's assertion the parties abandoned the Agreement by commingling their assets, it too is moot because the district court found Husband's contributions were spousal gifts under Paragraph 7 of the Agreement. In addition, Husband never raised the abandonment issue before the district court or challenged the enforceability of the Agreement. Instead, Husband testified at trial that he was ***not*** challenging the enforceability of the Agreement:

> Q. So is it fair for the Court and me to assume, then, because we're here at trial you're challenging the enforceability of the prenup?

A. I don't know that I would say that. All I'm saying is we had lots of agreements over the years that I was going to put money into her house and everything else that we both agreed to. She took the money, and now she wants to renege on the stuff that she said we was going to do. As husband and wife, we don't run down to a lawyer every single time and say, hey can we get this signed right here? That's ludicrous.

Q. So I guess I'm kind of confused then. Are you challenging the prenup, the enforceability of the prenup as written or not?

A. I don't think we're enforcing – I don't think we're – say it again.

Q. Are you challenging the enforceability of the prenup?

A. No, I don't think we're necessarily challenging the enforceability of the prenup, no.

[¶36] We will not consider the issue of abandonment for the first time on appeal. *Willis v. Davis,* 2013 WY 44, ¶ 21, 299 P.3d 88, 94 (Wyo. 2013); *Washington v. State,* 2011 WY 132, ¶ 15, 261 P.3d 717, 721 (Wyo. 2011).

### III.  *Equitable Distribution of the Parties' Remaining Assets and Debts.*

#### A.  General Property Division

[¶37]  Husband generally challenges the district court's division of property by alleging it did not properly utilize § 20-2-114(a).  Husband asserts, at a minimum, the district court should have ordered a repayment of his "traceable proceeds."  "We review the district court's division of marital property … for an abuse of discretion."  *Hyatt v. Hyatt,* 2023 WY 129, ¶ 11, 540 P.3d 873, 880 (Wyo. 2023) (citing *Conzelman v. Conzelman,* 2019 WY 123, ¶ 15, 453 P.3d 773, 778 (Wyo. 2019)).  "The ultimate question in determining whether an abuse of discretion occurred is whether the trial court could have reasonably concluded as it did."  *Metz v. Metz,* 2003 WY 3, ¶ 6, 61 P.3d 383, 385 (Wyo. 2003) (citing *Horn v. Welch,* 2002 WY 138, ¶ 8, 54 P.3d 754, 758 (Wyo. 2002)).  "We will not disturb a property division in a divorce case, except on clear grounds, as the trial court is usually in a better position than the appellate court to judge the parties' needs and the merits of their positions."  *Id.* (citations omitted).  An abuse of discretion will be found, however, "when 'the property disposition shocks the conscience of this Court and appears to be so unfair and inequitable that reasonable people cannot abide it.'"  *Hyatt,* ¶ 11, 540 P.3d at 880 (quoting *Innes v. Innes,* 2021 WY 137, ¶ 16, 500 P.3d 259, 262 (Wyo. 2021)).

[¶38]  The district court's exercise of discretion in distributing property during a divorce is guided by § 20-2-114(a):

[I]n granting a divorce, the court shall make such disposition of the property of the parties as appears just and equitable, having regard for the respective merits of the parties and the condition in which they will be left by the divorce, the party through whom the property was acquired and the burdens imposed upon the property for the benefit of either party and children.

[¶39] The district court need not afford any particular weight between the statutory considerations, and there are no hard and fast rules governing property division. *Malli v. Malli*, 2020 WY 42, ¶ 16, 460 P.3d 245, 249 (Wyo. 2020) (citations omitted); see also *Stoker v. Stoker,* 2005 WY 39, ¶ 22, 109 P.3d 59, 65 (Wyo. 2005). Furthermore, the statute does not require an equal division of property. *Engebretsen v. Engebretsen*, 2022 WY 164, ¶ 24, 522 P.3d 156, 163 (Wyo. 2022). "[I]n evaluating the position in which the parties will be left after the divorce, it is necessary to consider not only to whom property will be awarded, but also who will be responsible for any debt relating to that property." *Dutka v. Dutka*, 2023 WY 64, ¶ 43, 531 P.3d 310, 322 (Wyo. 2023) (citations omitted). Finally, the court is to take all marital property into account when deciding how to allocate property among the parties. *Hoffman v. Hoffman,* 2004 WY 68, ¶ 12, 91 P.3d 922, 925 (Wyo. 2004). A just and equitable division of property in a divorce case may consider a spouse's separate property. *Id.*

[¶40] Here, joint marital assets remained for the court to consider under § 20-2-114(a) after it applied the Agreement as written. Contrary to Husband's assertion, the district court applied § 20-2-114(a) to the marital assets not covered by the Agreement. It referred to Plaintiff's Exhibit 38, which listed the parties' total assets, including those acquired before the marriage and during the marriage. Among the most significant of the remaining assets not covered by the Agreement were the three businesses Husband formed after the parties married, Legacy, VIPS, and the Gas Max. The court awarded all three to Husband and only allowed Wife to retain her original 10% interest in Legacy. The district court also awarded Husband the Arkansas residence, a 2013 Chevy Camaro (which was jointly titled), certain bank accounts and investment accounts, his revocable trust, and other miscellaneous assets. Along with Golden and Capital and her 10% interest in Legacy, Wife received the Gillette residence (and its mortgage), certain bank and investment accounts, and her individual trust. The parties retained the personal property and jewelry they owned prior to the marriage, as well as jewelry worn during the marriage. Each party was ordered responsible for 50% of joint credit card debt and 100% of his or her own credit card debt. Ultimately, the trial court concluded its decision would leave both parties "in a comfortable position … with sufficient assets and means for income to meet the needs of life." We find the trial court did not abuse its discretion. Its conclusion that the division of property was fair, equitable, and would keep the parties well-situated financially was not in error.

13

[¶41] Husband also argues he should have been given an interest in "the assets or businesses" he invested in, or at the very least repayment of "traceable proceeds." His argument is one conclusory sentence that cites to one case, with no analysis. We do not consider issues unsupported by cogent argument or citation to pertinent authority, and therefore decline to consider the issue of traceability. *Baer v. Baer,* 2022 WY 165, ¶ 38, 522 P.3d 628, 640 (Wyo. 2022) (stating when a party only mentions an argument in the statement of the issues, it will not be considered).

## B. Good Faith and Unclean Hands

[¶42] Husband also makes the equitable argument that Wife failed to act in good faith when she entered into the Agreement and throughout the marriage. He claims that because of her "unclean hands," the equities in the distribution of marital property weigh in favor of Husband. Husband makes various accusations about Wife, many without any record citation at all, including that she stole, lied, and committed perjury. To the extent these accusations go to the "merits" of the parties under § 20-2-114(a), the district court made its findings clear:

> When assessing the merits of the parties [in accordance with § 20-2-114(a)], the Husband in this matter did seem to act out in a manner while this matter was pending which the court finds disconcerting by filing a complaint with law enforcement alleging that the Wife committed acts of forgery. The complaints were revealed to be unfounded but none the less [sic] given that the Wife is involved in the real estate industry, allegation[s] of that nature could place her professional reputation in peril. Husband further contacted professional associates and businesses with whom the Wife does business and made statements to cast her in an unfavorable light and even went so far as to disseminate those statements to Wife's Father.

The district court's findings regarding the parties' conduct and respective merits are supported by the record and are not clearly erroneous. The district court did not abuse its discretion in its assessment of the merits of the parties under § 20-2-114(a).

## C. Tax Decision

[¶43] Finally, Husband argues the district court "should have never made the parties file a joint [tax] return" and should have "declare[d] the $140,000 [prepayment] go directly to [Husband]." As previously explained, the district court considered these tax issues in a pretrial motion and entered an order requiring the parties file a joint return for 2021, stating their liability on the return as "joint and several." At trial, the court heard extensive

testimony from the parties and each of their experts regarding the appropriate split of tax liabilities and the $140,000 prepayment. This included Husband's testimony that he prepaid the $140,000 from his trust account and expert testimony regarding the benefits of the parties filing jointly. Ultimately, the district court ordered "the parties shall file joint tax returns for the years of 2021 and 2022. Each party shall be responsible for their share of any tax obligation in proportion to their individual income."

[¶44] Husband's argument heading on this issue reads as follows:

> *The trial court's tax ruling should be clarified, where clearly the couple should not have been made to file a joint return, where there was a $140,000.00 tax payment made by Appellant to the IRS with personal funds with his social security number denoted on the check for payment of his taxes.*

In the body of his argument, Husband restates that same sentence, recites his testimony and the district court's decision, and states he "should be allowed $140,000.00 to be applied against his taxes, married filing separately, and a return of any refund to him personally." He does not provide any pertinent legal authority or cogent argument for his position that he should not be required to file a joint tax return with Wife for 2021 or that he is solely entitled to the $140,000. He also does not provide any explanation as to how the district court abused its discretion in this portion of its decision. Absent cogent argument or citation to pertinent legal authority, we will not consider this issue on appeal. *Baer*, ¶ 38, 522 P.3d at 640 (citing *Hodson v. Sturgeon,* 2017 WY 150, ¶ 6, 406 P.3d 1264, 1265 (Wyo. 2017)).

[¶45] Husband has not shown the district court failed to properly distribute the assets not controlled by the Agreement, or otherwise abused its discretion in the distribution of assets and debts. The trial court's distribution does not shock the conscious of this Court.

### IV. Attorney Fees and Costs.

[¶46] Wife asserts this Court should award her appellate attorney fees under W.R.A.P. 1.03 as a sanction for Husband's deficient briefing. For the same reasons that we declined to summarily affirm the trial court as a sanction for the deficiencies in Husband's brief, we decline to award Wife attorney fees.

[¶47] Wife also claims she is entitled to attorney fees under the fee-shifting provision of the Agreement, which states:

> Should any party to this Agreement retain counsel for the purposes of enforcing or preventing the breach of a provision of this Agreement, including, but not limited to, by instituting

15

any action or proceeding to enforce any provision of the Agreement, for damages by reason of any alleged breach of any provision of this Agreement, for a declaration of such party's rights or obligations under the Agreement or for any other judicial remedy relating to it, then the prevailing party shall be entitled to be reimbursed by the losing party for all costs and expenses so incurred, including, but not limited to, reasonable attorneys' fees and costs for the services rendered to such prevailing party.

[¶48]   Wyoming generally applies the American rule, which makes the parties responsible for their own attorney fees.  *Circle C Res. v. Hassler*, 2023 WY 54, ¶ 8, 530 P.3d 288, 292 (Wyo. 2023).  However, a prevailing party may be reimbursed for fees when provided for by a contract.  *Id.* (citations omitted).  "Where a contract allows the award of attorney's fees, that includes fees incurred on appeal."  *Kinstler v. RTB S. Greeley, Ltd. LLC,* 2007 WY 98, ¶ 13, 160 P.3d 1125, 1129 (Wyo. 2007) (citing *Cline v. Rocky Mountain, Inc.*, 998 P.2d 946, 953 (Wyo. 2000)).   Nevertheless, even when a valid contractual provision for attorney fees exists, courts have discretion to allow only such sums as are reasonable. The court may also disallow attorney fees altogether if such recovery would be inequitable.  *Stafford v. JHL, Inc.,* 2008 WY 128, ¶ 19, 194 P.3d 315, 318 (Wyo. 2008) (citing *Dewey*, ¶ 50, 38 P.3d at  420).  *See also, Shepard v. Beck,* 2007 WY 53, ¶ 17, 154 P.3d 982, 989 (Wyo. 2007); *Castleberry v. Phelan,* 2004 WY 151, ¶ 12 n. 2, 101 P.3d 460, 463–464 n.2 (Wyo. 2004).

[¶49] Whether fee-shifting provisions apply in a particular case depends on the circumstances.  *See Douglas v. Jackson Hole Land Tr.*, 2020 WY 69, ¶ 23, 464 P.3d 1223, 1230 (Wyo. 2020).   In *Douglas*, we concluded the parties' contractual fee-shifting provision allowing recovery of attorney fees incurred in enforcing an easement did not apply to a declaratory judgment action:

Ms. Douglas does not request an order compelling any particular action, nor does JHLT request an order compelling her to do or refrain from doing something. Instead, the parties merely seek an interpretation of the agreement. *See Chapman v. Engel*, 372 Ill.App.3d 84, 310 Ill. Dec. 6, 865 N.E.2d 330, 333 (2007) ("[A] fee-shifting provision tied to an action to 'enforce' a lease does not apply in a declaratory judgment claim asking that the parties' rights under the lease be declared. The reason? Declaring rights is not the same as enforcing obligations."). Had the contracting parties intended the costs and fees provision of the agreement to apply to an action seeking an interpretation of any of the terms of the agreement, they easily could have said so. They did not.

*Id.,* ¶ 23, 464 P.3d at 1230.

[¶50]   This divorce case is analogous to *Douglas*.  Neither party retained counsel to *enforce* or *prevent* the breach of a provision of the Agreement.  Wife retained counsel when she filed for divorce, and Husband retained counsel *to defend* the divorce action.  Although Husband raised arguments pertaining to the Agreement below and on appeal, that does not implicate the fee-shifting provision of the Agreement.  The Agreement only contemplates the prevailing party be entitled to reimbursement for attorney fees by the losing party if either party "retain[s] counsel for the purposes of *enforcing or preventing the breach of a provision of [the] Agreement*."  Accordingly, we deny Wife's request for attorney fees.

## CONCLUSION

[¶51]   The district court did not err in its interpretation and application of the Premarital Agreement, nor did it abuse its discretion in its property division pursuant to Wyo. Stat. Ann. § 20-2-114(a).  Wife is not entitled to attorney fees under W.R.A.P. 1.03 or the Premarital Agreement.

[¶52] Affirmed.