# IN THE SUPREME COURT, STATE OF WYOMING

# 2026 WY 61

**APRIL TERM, A.D. 2026**

**June 4, 2026**

ANDREA K. SMERSKI f/k/a Andrea
K. Lemon,

Appellant
(Plaintiff),

v.

DARREN M. LEMON,

Appellee
(Defendant).

S-25-0311

*Appeal from the District Court of Sheridan County*
The Honorable Darci A.V. Phillips, Judge

*Representing Appellant:*
Timothy J. Pearse, Chapman Valdez & Lansing, Casper, Wyoming.

*Representing Appellee:*
Amanda K. Achord, Lonabaugh and Riggs, LLP, Sheridan, Wyoming; Christopher
M. Wages, The Wages Group, LLC, Buffalo, Wyoming.

*Before BOOMGAARDEN, C.J., GRAY, FENN, JAROSH, and HILL, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**JAROSH, Justice.**

[¶1]    Darren Lemon (Husband) and Andrea Smerski (Wife) married in 2017 and signed a postnuptial agreement in 2018.  Wife filed for divorce in 2024.  In 2025, the trial court held a bench trial, after which it divided the parties' property.  Wife appeals, contending the district court improperly interpreted the terms of the postnuptial agreement related to some of the parties' retirement accounts, resulting in an improper distribution of the parties' assets.  We reverse.

## ISSUES

[¶2]    Wife asserts a single issue on appeal, which we rephrase as:

> Did the district court err in its interpretation of the postnuptial agreement when it found retirement accounts disclosed by the parties as part of the agreement were entirely the parties' separate property?

## FACTS

[¶3]    Husband and Wife married on March 31, 2017, in Oregon.  In November 2018, the parties entered into a postnuptial agreement.  The parties agree that the postnuptial agreement is valid and enforceable.

[¶4]    The recitals to the postnuptial agreement provide in relevant part.

> A. The parties are married and desire to enter into this postnuptial agreement for the purpose of defining the respective rights that each will have in the property and the estate of the other, both during their marriage and after its termination by the death of one of them, or by dissolution, annulment, or legal separation ("dissolution").
> B. The parties own certain assets, the nature and extent of which have been fully disclosed to each of them.  The parties have disclosed a list of all their property to the other, copies of which are attached to and incorporated into this agreement as Exhibits A and B.
> ***
> C. . . . [T]he parties desire to enter into an agreement concerning the disposition of their property and desire the agreement to be enforced in any future dissolution, regardless of any change of circumstances that may occur

1

between the date of execution of this agreement and the date of dissolution.

***

D. Each party acknowledges that he or she has not only read and fully comprehended this agreement and all of its terms, but also acknowledges that . . . (b) he or she understands that by this agreement he and she are giving up substantial legal rights in the property of the other in return for the rights to keep separate and to control his or her own property . . ..

[¶5]  Exhibit A, titled, "Separate Property of [Wife]" lists, among other things, three retirement accounts — a Roth IRA, a St. Luke's Health Systems 401(A) Matching Plan, and a St. Luke's Health System Matched 403(B) Plan.[1]  Exhibit B, titled, "Separate Property of [Husband]" lists, among other things, a Thrift Savings Plan.[2]  For ease of reference, we will refer to these four accounts as the Subject Retirement Accounts.

[¶6]  Paragraph 2 of the postnuptial agreement, titled "Separate Property," provides in relevant part:

With the exception of retirement benefits and entitlements owned by either party, either now or in the future, all of the property of each party owned by them at the time of their marriage including, but not limited to, that set forth on Exhibits A and B, and hereafter acquired in the sole name of either party, and all income, rents, profits, and increases in value derived or accruing therefrom or from a sale, exchange, or liquidation of the same will be and will remain the separate property ("separate property") of each of them respectively.

[¶7]  At the end of Paragraph 2, the Postnuptial Agreement states that retirement benefits and entitlements are to be treated distinctly, stating, "The parties decline to characterize retirement benefits and entitlements as separate or joint property."

---

[1] "A 403(b) plan (also called a tax-sheltered annuity or TSA plan) is a retirement plan offered by public schools and certain 501(c)(3) tax-exempt organizations."  https://www.irs.gov/retirement-plans/irc-403b-tax-sheltered-annunity-plans.

[2] A "Thrift Savings Plan (TSP) is a retirement savings and investment plan for federal government employees and uniformed services members, including the Ready Reserve.  Established by Congress in the Federal Employees' Retirement System Act of 1986, the TSP offers the same types of savings and tax benefits that many private corporations offer their employees under 401(k) plans."  https://www.tsp.gov/about-the-thrift-savings-plan-tsp/.

2

[¶8]    Paragraph 5 of the postnuptial agreement, titled "Property Rights Upon Dissolution" states:

> If the marriage of the parties is dissolved and a dissolution is entered by a court of competent jurisdiction, the parties agree that each will have the following rights:
>
> a. [Wife] will be entitled to her separate property as defined in paragraph [sic] above.
>
> b. [Husband] will be entitled to his separate property as defined in paragraph 2 above.
>
> ***
>
> g. The parties agree to the following calculation for the purpose of determine [sic] division of retirement benefits, accounts, or entitlements: (1) all retirement account balances including contributions and interest or retirement benefits, accounts, or entitlements prior to June 1st, 2017 will be considered the separate property of the parties and not subject to division; and (2) all contributions, earnings on contributions, or interest earned on contributions, made on or after June 1st, 2017, shall be considered the joint property of the parties and subject to division under applicable legal standards applied by a court with jurisdiction over the division of property and the parties.

[¶9]    Finally, the postnuptial agreement includes a choice of law provision:

> All terms of this agreement, including, but not limited to, provisions for the distribution of each party's separate estate and for the distribution of the parties' joint estate, will be in accordance with the laws of the state of Oregon existing at the time either party files a petition for dissolution, annulment, limited or unlimited separation, unless the parties agree that this agreement will be treated in accordance with the laws of another state.

[¶10]   On August 26, 2024, Wife filed for divorce in Wyoming. Shortly thereafter, Husband answered the complaint and counterclaimed for divorce. The district court held a bench trial on June 30 and July 1, 2025, and later entered a fifty-one page Decree of Divorce. In its decree, the district court found that the postnuptial agreement between Husband and Wife was valid and enforceable.

[¶11]   At the time of trial, the parties had various additional retirement accounts beyond the Subject Retirement Accounts identified in Exhibits A and B. In its Decree of Divorce,

the district court divided those additional accounts pursuant to paragraph 5(g) of the postnuptial agreement. Specifically, for retirement accounts not listed in Exhibits A or B, the decree distributed the value of the retirement accounts pre- and post-June 1, 2017, as contemplated by paragraph 5(g). For account balances pre-June 1, 2017, the district court treated the retirement accounts as the parties' separate property. For all contributions, earnings, and interest after June 1, 2017, the court treated the accounts as marital property.

[¶12] However, the district court treated the Subject Retirement Accounts listed in Exhibits A and B differently. Specifically, the district court explained, "The Court does not find paragraph 2 of the Postnuptial Agreement to be ambiguous. Exhibit A and Exhibit B, referenced in paragraph 2, clearly identify accounts that the parties expected would remain their separate property." The district court then awarded Wife the entire value of all three retirement accounts identified in Exhibit A, and Husband the full value of the Thrift Savings Plan identified in Exhibit B. This was significant because, according to Husband, the value of his Thrift Savings Plan had increased substantially.

[¶13] Wife timely appealed.

## DISCUSSION

[¶14] The postnuptial agreement contains a choice of law provision that neither party challenges providing that the laws of Oregon apply to distribution of the parties' property pursuant to the postnuptial agreement. "In the event that another state's substantive law applies to a dispute, Wyoming law still controls any procedural matters, including the applicable standard of review." *Boyce v. Jarvis*, 2021 WY 80, ¶ 17, 490 P.3d 320, 324 (Wyo. 2021) (citing *Denbury Onshore, LLC v. APMTG Helium LLC*, 2020 WY 146 ¶ 24, 476 P.3d. 1098, 1105 (Wyo. 2020)).

[¶15] "Marital agreements, whether prenuptial or postnuptial, are valid and enforceable in Wyoming and are governed by the same rules of construction applicable to other contracts." *Jones v. Young*, 2025 WY 130, ¶ 44, 580 P.3d 1026, 1038 (Wyo. 2025) (citing *Morrison v. Hinson-Morrison*, 2024 WY 96, ¶ 15, 555 P.3d 944, 952 (Wyo. 2024); and *Long v. Long*, 2018 WY 26, ¶ 11, 413 P.3d 117, 122 (Wyo. 2018)) "Contract interpretation is a matter of law which we consider de novo." *Morrison*, ¶ 15, 555 P.3d at 952 (quoting *Hensel v. DAPCPA RPO, LLC*, 2023 WY 84, ¶ 12, 534 P.3d 460, 464 (Wyo. 2023)). The goal in interpreting a contract is to ascertain the intent of the parties as demonstrated by the specific language used in the agreement. *Id*. (citing *Van Vlack v. Van Vlack*, 2023 WY 104 ¶ 20, 537 P.3d 751, 757 (Wyo. 2023)) (citation modified).

[¶16] Wife's appeal is limited to the district court's determination that, pursuant to Paragraph 5(g) of the postnuptial agreement, the post-June 1, 2017, contributions, earnings, and interest from the Subject Retirement Accounts remain the separate property of the account holder. Specifically, Wife argues that the postnuptial agreement clearly and

4

unambiguously categorizes the pre-June 1, 2017, value as separate property, but categorizes post-June 1, 2017, contributions, earnings, and interest as joint property subject to distribution.  We agree with Wife.

[¶17]  As previously explained, the postnuptial agreement contains a choice of law provision.  "Wyoming courts will enforce choice-of-law provisions and apply foreign law when doing so is not 'contrary to the law, public policy, or the general interests of Wyoming's citizens.'"  *Finley Resources, Inc. v. EP Energy E&P Co. L.P.*, 2019 WY 65, ¶ 9, 443 P.3d 838, 842 (Wyo. 2019).  Like Wyoming, and as the district court explained in the Decree of Divorce, Oregon courts interpret postnuptial agreements the same as any other contract:

> The rules applicable to the construction of written contracts in general are to be applied in construing a postnuptial agreement.  Such a contract must be considered as a whole, and from such examination the intent of the parties must be gathered.  Such construction should be given the agreement, if possible, as will render all its clauses harmonious, so as to carry into effect the actual purpose and intent of the parties as derived therefrom.

*Brown v. Miles*, 193 Or. 466, 480, 238 P.2d 761, 768 (Or. 1951); *see also*, *Jones*, ¶ 45, 580 P.3d at 1038 (the "goal in interpreting contracts is to ascertain the parties' intent as evidenced by the specific language of the agreement") (quotation omitted)); *Morrison*, ¶ 16, 555 P.3d at 952 ("[t]he words used in the contract are afforded the plain meaning that a reasonable person would give them.  When the provisions in the contract are clear and unambiguous, the court looks only to the 'four corners' of the document in arriving at the intent of the parties.") (quotation omitted)).  Because the rules for interpreting contracts in Wyoming and Oregon are similar, it is appropriate to refer to analogous cases from both jurisdictions.  *Bradley v. Bradley*, 2007 WY 117, ¶ 15, 164 P.3d 537, 542 (Wyo. 2007).

[¶18]  With the foregoing principles in mind, we turn to the postnuptial agreement at issue, where our task is to ascertain the intent of Husband and Wife by looking at the agreement as a whole and applying plain and ordinary meaning to its terms.  *See Western Bank v. Youngs*, 545 P.2d 886, 888 (Or. 1976) (recognizing a contract "cannot be read in isolation"); *see also, Sheridan Fire Fighters Loc. No. 276, IAFF, AFL-CIO, CLC v. City of Sheridan*, 2013 WY 36, ¶ 16, 303 P.3d 1110, 1115 (Wyo. 2013) ("Our rules of interpretation require that we interpret a contract as a whole[.]").  When we do so, we see that the district court erred in treating the post-June 1, 2017, contributions, earnings, and interest from the Subject Retirement Accounts as the separate property of Husband and Wife.

[¶19]   Neither party argues on appeal that the postnuptial agreement is ambiguous.  It is evident from the postnuptial agreement that Husband and Wife intended that all retirement accounts, *including those existing at the time of the postnuptial agreement*, receive their own unique treatment in the event of a divorce.  That is apparent from the language of Paragraph 2 of the postnuptial agreement emphasized below, which specifically excludes existing and future retirement accounts from the definition of "separate property" or "joint property," including any retirement accounts listed in Exhibit A or B:

> **With the exception of retirement benefits and entitlements owned by either party**, **either now or in the future**, all of the property of each party owned by them at the time of their marriage including, but not limited to, that set forth on Exhibits A and B, and hereafter acquired in the sole name of either party, and all income, rents, profits, and increases in value derived or accruing therefrom or from a sale, exchange, or liquidation of the same will be and will remain the separate property ("separate property") of each of them respectively.
> ***
> **The parties decline to characterize retirement benefits and entitlements as separate or joint property**.

[¶20]   Rather than define retirement accounts as strictly separate property or strictly joint property, the postnuptial agreement included a distinct provision providing for different treatment of retirement accounts.  Paragraph 5(g) explains:

> The parties agree to the following calculation for the purpose of determine [sic] division of retirement benefits, accounts, or entitlements: (1) all retirement account balances including contributions and interest or retirement benefits, accounts, or entitlements prior to June 1st, 2017 will be considered the separate property of the parties and not subject to division; and (2) **all contributions, earnings on contributions, or interest earned on contributions, made on or after June 1st, 2017, shall be considered the joint property of the parties and subject to division under applicable legal standards applied by a court with jurisdiction over the division of property and the parties.**

(emphasis added).

[¶21]   This necessarily includes the Subject Retirement Accounts identified on Exhibits A and B.  As a result, the contributions, earnings, and interest from the Subject Retirement

Accounts after June 1, 2017, should have been treated as "joint property of the parties and subject to division under applicable legal standards applied by a court with jurisdiction over the division of property and the parties." In this case, that means the property was subject to distribution by the district court under Wyo. Stat. Ann. § 20-2-114 (2025).

[¶22] The district court did not separate out the post-June 1, 2017, contributions, earnings, and interest from the Subject Retirement Accounts, and instead awarded the entirety of each of those accounts to the named account holder. This was error.

[¶23] This is not to say that the district court should have made any specific division of the post-June 1, 2017, contributions, earnings and interest from the Subject Retirement Accounts; rather, just that it should have made a disposition of that property under § 20-2-114 ("in granting a divorce, the court shall make such disposition of the property of the parties as appears just and equitable, having regard for the respective merits of the parties and the condition in which they will be left by the divorce, the party through whom the property was acquired and the burdens imposed upon the property for the benefit of either party and children.").

## CONCLUSION

[¶24] The post-June 1, 2017, contributions, earnings, and interest from the Subject Retirement Accounts listed on Exhibits A and B of the postnuptial agreement were joint property subject to distribution by the district court pursuant to Wyo. Stat. Ann. § 20-2-114. As a result, we reverse and remand this case to the district court to engage in such a distribution.

7